[No. 15469-6-III.  Division Three.  July 10, 1997.]

JOHN LESTER, ET AL., *Appellants,* v. THE TOWN OF WINTHROP, *Respondent.*

*Greg Montgomery* and *Reed McClure*, for appellants.
*Stephen M. Lamberson, Susan W. Troppman,* and *Etter, McMahon & Lamberson, P.C.,* for respondent.

SWEENEY, C.J. — On July 6, 1993, Carol and John Lester

applied for a shoreline substantial development permit to improve resort property in Winthrop, Washington. The project was subject to Winthrop's Shoreline Master Program and the State Environmental Policy Act of 1971. Winthrop permit administrator, Lisa Schade, told the Lesters at their first meeting that their application was complete. About 10 days later, she told them that more information was needed. The Lesters' application was completed on August 6. On September 28, Ms. Schade told the Lesters that the permit would be conditioned on their grant of an easement for a pedestrian trail along the river. Ms. Schade issued the permit with the easement condition on September 30. The Lesters appealed to the Winthrop town council. On October 19, the day before the appeal hearing, Winthrop deleted the easement requirement and issued a revised shoreline substantial development permit. The revised permit was filed with the Department of Ecology on October 27. Because of the Department's 30-day review period, the Lesters could not begin construction until late November. By then, weather conditions made it impractical to begin construction.

The Lesters sued the Town of Winthrop claiming it was liable under 42 U.S.C. § 1983 for improperly conditioning the permit. The Lesters also alleged that Winthrop inadequately trained and supervised Ms. Schade. The court granted summary judgment in favor of Winthrop. The primary question here is whether Winthrop's delay in issuing the permit is enough to support a violation of the Lesters' substantive due process rights and allow for an action under § 1983. We conclude it is not and affirm the trial court's decision dismissing the Lesters' claims.

## DISCUSSION

42 U.S.C. § 1983 Action. If a plaintiff has been deprived of a federal right, he or she can recover money damages under 42 U.S.C. § 1983. *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11, 829 P.2d 765 (1992) (*Sintra* I). The operative statute reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Two essential elements exist in a § 1983 action: (1) the plaintiff must show that he or she was *deprived* of a federal constitutional or statutory right, and (2) the person depriving the plaintiff must have been acting under color of state law. *Sintra* I, 119 Wn.2d at 11 (and cases cited therein).

The existence of the second element is not in dispute here. And since the Lesters do not claim deprivation of a statutory right, we focus on whether the Lesters have been deprived of a federal constitutional right— the deprivation of property without due process of law. U.S. CONST. amend. XIV.

█ The denial of a building permit may give rise to a substantive due process claim. *Robinson v. City of Seattle*, 119 Wn.2d 34, 56, 830 P.2d 318 (1992); *R/L Assocs., Inc. v. City of Seattle*, 113 Wn.2d 402, 412, 780 P.2d 838 (1989). A land use decision denies substantive due process only if it is invidious or irrational or arises from arbitrary, irrational action on the part of regulators. *Sintra* I, 119 Wn.2d at 23; *R/L Assocs.*, 113 Wn.2d at 412 (quoting *Harding v. County of Door*, 870 F.2d 430, 431 (7th Cir. 1989)).[1]

---

[1] In *Sintra* I, our Supreme Court held that enforcement of the former Housing Preservation Ordinance violated Sintra's substantive due process as unduly oppressive. It remanded the matter for a determination of whether the City of Seattle's conduct was irrational or invidious. *Sintra* I, 119 Wn.2d at 29. On remand, the jury denied Sintra's § 1983 claim on the basis that the city's unconstitutional conduct did not proximately cause any harm to Sintra. Recently, in *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 935 P.2d 555 (1997) (*Sintra* II), the court was asked to revisit the dispute and hold that § 1983 provided a damage remedy for substantive due process violations irrespective of whether the act violating substantive due process was invidious or irrational. *Id.* at 652. Applying the law of the case, the court held that review of the invidious or irrational standard was not proper. *Id.* at 645.

■ In *Sintra* I, the court held that relief under § 1983 was available only when "there is a substantial infringement of state law prompted by animus directed at an individual or a group, or a 'deliberate flouting of the law that trammels significant personal or property rights.'" *Sintra* I, 119 Wn.2d at 23 (quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)).

■ Here, the Lesters argue that Winthrop's condition—requiring the easement—violated their substantive due process rights and is actionable under § 1983 because: (1) the permit condition was arbitrary and capricious since Winthrop's Master Shoreline Program does not set out specific standards which are necessary to assess the reasonableness of Ms. Schade's decision; (2) Winthrop did not go through a process to determine if the easement was necessary; and (3) a court should conclude the decision was arbitrary and capricious since no findings were made that the easement condition was reasonable. The Lesters' claim depends on the assumption that Winthrop's ultimate issuance of a permit without a condition did not relieve it of liability for its alleged arbitrary, capricious, and unlawful handling of their application. We disagree.

■ In a § 1983 action, a plaintiff must show that the defendant *deprived* the plaintiff of a constitutionally protected right. *Robinson*, 119 Wn.2d at 58; *R/L Assocs.*, 113 Wn.2d at 412. The Lesters were not deprived of a federally protected right. They received the very permit they sought within 19 days of Winthrop initially granting the permit with the easement condition. The due process clause of the Fourteenth Amendment only requires a state to employ fair procedures in administering its regulations. "It does not . . . impose the utopian requirement that enforcement action may not impose any cost upon the citizen unless the government's position is completely vindicated." *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 205, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985) (Stevens, J., concurring).

In *Chiplin Enters., Inc. v. City of Lebanon*, 712 F.2d 1524 (1st Cir. 1983), a developer first requested a building permit in the fall of 1976. Approval of the permit was first granted but later denied after a public hearing. The developer sued to force issuance of the permit. One was ultimately issued in November 1981, five years after the initial request. The developer then sued the city under § 1983 for damages caused by the delay. It argued that the city had no valid reason to reject the application because all the legal requirements for the permit had been met. The First Circuit held that the developer failed to make out a claim because "[t]hese allegedly improper delays ended . . . with the grant of a permit." *Id.* at 1528 n.7; *see also Licari v. Ferruzzi*, 22 F.3d 344, 349 (1st Cir. 1994) (rejecting substantive due process claim for delay in issuance of building permit); *Biser v. Town of Bel Air*, 991 F.2d 100 (4th Cir. 1993) (builder must have legitimate claim of entitlement to permit rather than unilateral expectation to state a substantive due process claim); *Mandelstam v. City of S. Miami*, 685 So. 2d 868, 869-70 (Fla. Dist. Ct. App. 1996) (delay in obtaining permit did not violate substantive due process); *Forsyth County v. Greer*, 211 Ga. App. 444, 439 S.E.2d 679, 682 (1993) (no § 1983 claim exists when permits ultimately issued but project "somewhat delayed").

The Lesters rely on two cases for their position that Winthrop's delay created a per se violation of their substantive due process rights—*Hayes v. City of Seattle*, 76 Wn. App. 877, 888 P.2d 1227 (1995), *aff'd*, 131 Wn.2d 706, 934 P.2d 1179 (1997), and *Norquest/ RCA-W Bitter Lake Partnership v. City of Seattle*, 72 Wn. App. 467, 865 P.2d 18, *review denied*, 124 Wn.2d 1021 (1994). Both cases are distinguishable.[2]

In *Hayes*, a developer sued the City of Seattle for dam-

---

[2]The Lesters also claim the delay is a per se violation since *Sintra* I provides "action for violation of these [substantive due process] rights is ripe the instant the violation occurs because the harm occurs at the time of the violation." Appellant's Br. at 35; *see Sintra* I, 119 Wn.2d at 21 n.11. The language they depend on in *Sintra* I addresses why the exhaustion of administrative remedies is gen-

ages caused by the city's improper imposition of conditions on its master use permit. The city had denied the developer's permit request for a 4-story, 10-unit apartment. Instead, it allowed a scaled-down version, a 3-story, 8-unit building. *Hayes*, 76 Wn. App. at 878. Thus, the actual permit sought by the developer in *Hayes* was denied. On review, our Supreme Court held the developer was entitled to damages under RCW 64.40. *Hayes*, 131 Wn.2d at 718. It reasoned that the city council's failure to describe the adverse environmental impact and outline mitigation measures was "willful and unreasoning" and therefore arbitrary and capricious. *Id.* at 717-18.

*Hayes* is factually distinguishable. Winthrop's action was not "conclusory" as was the City of Seattle's. And Winthrop granted the Lesters the very permit requested. The brief delay for Winthrop to *consider* the easement is not invidious, irrational, arbitrary or capricious.

The Lesters also rely on *Norquest/RCA-W* for their position that Winthrop's delay in issuing the permit was a substantive due process violation under 42 U.S.C. § 1983. In *Norquest/RCA-W*, the city told Norquest/RCA-W that it would not issue a building permit until an approved master plan was submitted. Norquest/RCA-W sued to compel the issuance of the permit and for damages. *Norquest/RCA-W*, 72 Wn. App. at 472. Division One held that the city had acted arbitrarily and capriciously in denying the permit. *Id.* at 480. The court noted that "an arbitrary and capricious *denial* of a building or conditional use permit automatically entitles one to section 1983 damages." *Id.* at 481 (emphasis added); *see also Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 97, 829 P.2d 746 (1992) (*denial* of permit was arbitrary and capricious). Again, *Norquest/RCA-W* is distinguishable on its facts. There, the city refused to grant the building permit. That did not happen here.

erally not required. The language also makes it clear that a harm must occur before it is actionable. *See Robinson*, 119 Wn.2d at 56 (imposing condition of dedicating easement is "not per se violative of substantive due process"). Given the facts here, specifically the short delay, we do not equate the delay that occurred with an occurrence of a harm.

■ The delay involved here is simply not sufficient to establish a substantive due process claim. Only 55 days passed from the time the Lesters' application was complete until the time their permit was issued with the easement condition. Of that, at least 38 days were attributable to the time allotted for public comment. Former RCW 90.58.140(4) (amended by LAWS OF 1995, ch. 347, § 309). The permit was eventually issued without the easement condition 19 days after it was imposed. The delay was not invidious, irrational, arbitrary or capricious. It did not therefore violate the Lesters' substantive due process rights. *See* 6 WASHINGTON STATE BAR ASS'N, REAL PROPERTY DESKBOOK § 93.7(1), at 93-44 (3d ed. 1996) (indicating a typical efficient shoreline permit process takes 90 to 100 days); *cf.* RCW 36.70B.090 (giving local governments 120 days after application is complete to issue notice of final decision of shoreline substantial development permit). The trial court did not err.

Negligence Claim Against Winthrop. The Lesters next argue the court erred in dismissing their negligence claim against Winthrop. They assert that they had a special relationship with Ms. Schade. They claim therefore that Winthrop is liable in negligence despite the public duty doctrine. *Sundberg v. Evans*, 78 Wn. App. 616, 623, 897 P.2d 1285 (1995), *review denied*, 128 Wn.2d 1008 (1996).

■ A municipal defendant is liable for negligence only if it breaches a duty of care owed to the plaintiff, not to the public at large. *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 6, 882 P.2d 157 (1994); *Taggart v. State*, 118 Wn.2d 195, 217, 822 P.2d 243 (1992) ("a duty to all is a duty to no one").

■■ There are several exceptions to the public duty doctrine. *Taggart*, 118 Wn.2d at 217-18. Only one is relevant here; that is the so-called special relationship exception. A special relationship is created when (1) there is privity or direct contact between a public official and an injured plaintiff, (2) the public official gives express assurances, and (3) the plaintiff justifiably relies on those assur-

ances. *Taylor v. Stevens County*, 111 Wn.2d 159, 166, 759 P.2d 447 (1988); *Sundberg*, 78 Wn. App. at 624.

Here, it is undisputed that Ms. Schade had direct contact with the Lesters. The question is whether Ms. Schade gave express assurances and whether the Lesters justifiably relied on those assurances. The governmental entity must make an express assurance, not an implicit assurance. *Honcoop v. State*, 111 Wn.2d 182, 192, 759 P.2d 1188 (1988). The Lesters contend Ms. Schade made direct assurances that their application was complete. She may have. But she did not make an express assurance that they would receive the permit. It was not more than 10 days later that she told them the application was incomplete. Her initial statement that the application was complete is not an express assurance that could give rise to justifiable reliance. *Id.* at 192. The Lesters did not start constructing their museum after that first meeting. The trial court properly concluded that the Lesters did not qualify for the special relationship exception to the public duty doctrine.

Negligent Hiring. The Lesters also contend the court erred in dismissing their claim against Winthrop for negligently hiring Ms. Schade.

To establish a cause of action for negligent hiring, the Lesters must show that (1) Winthrop knew or, in the exercise of ordinary care, should have known of Ms. Schade's unfitness at the time of hiring, and (2) the negligently hired employee proximately caused the resulting injuries. *Guild v. Saint Martin's College*, 64 Wn. App. 491, 498-99, 827 P.2d 286, *review denied*, 119 Wn.2d 1016 (1992). " 'The theory of these decisions is that such negligence on the part of the employer is a wrong to such third person, entirely independent of the liability of the employer under the doctrine of respondeat superior.' " *Peck v. Siau*, 65 Wn. App. 285, 288, 827 P.2d 1108 (quoting *Scott v. Blanchet High Sch.*, 50 Wn. App. 37, 43, 747 P.2d 1124 (1987)), *review denied*, 120 Wn.2d 1005 (1992).

It is undisputed that Ms. Schade had no experience in the building field and was ultimately fired. Winthrop, however, asserts her performance was not so unsatisfactory that it should have been put on notice that she was unfit for the position. The determinative question here is whether Ms. Schade's unsatisfactory job performance was in fact the proximate cause of the Lesters' injuries. The Lesters have not shown that the imposition of the easement was due to Ms. Schade's lack of training. The condition was consistent with Winthrop's Shoreline Master Program. Ms. Schade's unsatisfactory job performance was not then the proximate cause of the Lesters' damages.

The decision of the trial court is affirmed.

THOMPSON and KURTZ, JJ., concur.