[No. 26131-0-III.   Division Three.   April 8, 2008.]

MICHELLE SMITH ET AL., *Appellants*, v. SACRED HEART MEDICAL CENTER ET AL., *Respondents*.

538

*Dustin D. Deissner* (of *Van Camp & Deissner*), for appellants.

*Mary H. Spillane* (of *William Kastner & Gibbs*), *Mary M. Palmer* and *Keller W. Allen* (of *Allen & McLane, PC*), and *Carole L. Rolando*, for respondents.

¶1 SWEENEY, C.J. — An employer is liable for the acts of its employees done in the scope and course of employment and therefore in furtherance of the employer's business. An employer is also responsible for its own negligence in failing to properly supervise an employee or in failing to protect those particularly vulnerable from foreseeable harm. Here, a nursing assistant employed by a hospital contacted two psychiatric patients in his employer's hospital. He hugged and kissed one patient and hugged another and suggested they have sex. Both patients went to the nursing assistant's home and engaged in sexual activity of one form or another only after the assistant had abandoned his job and after the patients had been discharged. We conclude that the court properly dismissed the patients' suit against the hospital.

## FACTS

¶2 *History.* Sacred Heart Medical Center admitted Michelle Smith to inpatient care in its psychiatric ward on January 29, 2004. It admitted Karla Hamilton to the unit in early February 2004. Ms. Smith and Ms. Hamilton met in the psychiatric unit and became friends.

¶3 Ray Judici worked as a nursing assistant for Sacred Heart in the psychiatric unit. He performed room checks. He and Ms. Smith discreetly touched hands, legs, and feet while they were in the unit's common area. They hugged and kissed each other while they were alone in Ms. Smith's room 6 to 12 different times during Mr. Judici's employment. They did not have sexual intercourse or fondle each other at the hospital. Ms. Smith told Ms. Hamilton about her contact with Mr. Judici.

¶4 Ms. Hamilton did not have sexual contact with Mr. Judici while she was a patient at Sacred Heart. He did, however, hug her and tell her that he wanted to have group sex with her and Ms. Smith. Ms. Hamilton did not tell anyone at Sacred Heart about the incident. She told a friend, Daniel Koester.

¶5 Ms. Hamilton then overheard Mr. Koester tell someone at Sacred Heart about Mr. Judici's sexual advances

toward her and Ms. Smith. She was in her room when she heard Mr. Koester talking. She looked out her door and saw nurses crowded around Mr. Koester. A water pipe had burst. People were running everywhere. And it was loud while Mr. Koester was talking to the nurses.

¶6 Sacred Heart discharged Ms. Hamilton in late February and Ms. Smith on March 2, 2004. On March 4, Sacred Heart told Mr. Judici that he had to schedule an "investigatory meeting" before he could return to work. Clerk's Papers at 25, 42. Mr. Judici never returned to work. On March 6, Ms. Hamilton met Ms. Smith and Mr. Judici and his wife, Melanie, at a bar. They all left the bar and went to the Judici home. Ms. Hamilton, Ms. Smith, and Mr. and Ms. Judici all went into a bedroom where Ms. Smith and the Judicis engaged in group sex on the bed. Ms. Smith only remembers kissing Ms. Judici. Ms. Hamilton sat by the bedroom window. Mr. Judici grabbed Ms. Hamilton and forced her to fellate him.

¶7 Ms. Smith called Mr. Judici on March 7. He visited her at her apartment, and they had sex.

¶8 *Procedure*. Ms. Smith, her husband (Grandin Smith), and Ms. Hamilton sued the Judicis and Sacred Heart. They alleged sexual abuse, outrage, negligence, gross negligence, dereliction of duty, civil rights violations, and criminal and tortious conduct against the Judicis. They also alleged negligent supervision, negligent failure to protect, and liability based on the doctrine of respondeat superior against Sacred Heart.

¶9 The superior court dismissed all claims against all defendants. Ms. Hamilton and the Smiths appealed the dismissals. But the appellants assign error only to the court's dismissal of Sacred Heart: "The court below erred in granting summary judgment to Defendant Sacred Heart Medical Center." Appellants' Br. at 1. And they contend only that Sacred Heart is liable under theories of vicarious liability, negligent supervision, and negligent failure to protect. And we, accordingly, address only those assignments of error.

## DISCUSSION

¶10 Ms. Hamilton and the Smiths argue that Sacred Heart owed them a duty of care based on a "special relationship." They argue that Sacred Heart had notice of inappropriate conduct. And they argue that the hospital's failure to act led to the sexual liaisons that followed their discharge from the hospital. They also argue that Sacred Heart was vicariously liable for Mr. Judici's tortious acts.

¶11 Sacred Heart argues that it did not have a "special relationship" with Ms. Smith or Ms. Hamilton because neither was helpless or unable to protect herself while she was an inpatient. And, moreover, they were not inpatients when some of the acts that they complain of occurred. Indeed, Mr. Judici did not even work for Sacred Heart at that time. He was a former employee. Finally, Sacred Heart responds that all of the conduct complained of here was outside the scope of Mr. Judici's employment with the hospital.

■■ ¶12 We review an order granting summary judgment de novo. *Seybold v. Neu*, 105 Wn. App. 666, 675, 19 P.3d 1068 (2001). Summary judgment in favor of a defendant is appropriate only if the plaintiff fails to establish a prima facie case for an essential element of his or her claim. *Id.* at 676. We view the evidence and any inferences that may be drawn from that evidence in a light most favorable to the nonmoving party. *Miller v. Jacoby*, 145 Wn.2d 65, 71, 33 P.3d 68 (2001) (citing *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989)). Our de novo review also requires that we evaluate whether evidence is sufficient or whether it should have been considered and to what extent. *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

VICARIOUS LIABILITY

■ ¶13 First, Ms. Hamilton and the Smiths argue that Sacred Heart is vicariously liable for Mr. Judici's torts. But

the employee must act on behalf of the employer and not on some personal lark of his own for liability to attach:

> Vicarious liability . . . imposes liability on an employer for the torts of an employee who is acting on the employer's behalf. Where the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable. . . . [T]he scope of employment limits the employer's vicarious liability.

*Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). And an employee's conduct falls outside the scope of his employment when his acts are directed toward personal sexual gratification. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 54, 59 P.3d 611 (2002).

¶14 Here, Ms. Hamilton alleges that, one time while she was a patient at Sacred Heart, Mr. Judici hugged her and told her he wanted to have group sex with her and Ms. Smith. She also alleges that Mr. Judici forced her to fellate him at his house after she was no longer a patient and he was no longer an employee. These acts, even if true, do not further the business of the hospital. They, instead, further Mr. Judici's compulsion for personal sexual gratification. Hugs, kisses, and sexual intercourse satisfy personal objectives, not the hospital's purpose. *See Bratton v. Calkins*, 73 Wn. App. 492, 501, 870 P.2d 981 (1994) (personally motivated sexual relationship between teacher and student does not further employer's interest); *see also Thompson v. Everett Clinic*, 71 Wn. App. 548, 553, 860 P.2d 1054 (1993) (doctor's sexual assault of patient was an act outside scope of employment).

¶15 Mr. Judici's most significant inappropriate conduct with Ms. Smith occurred after he was no longer employed by Sacred Heart. And all of Mr. Judici's alleged tortious contacts with Ms. Smith were, again, in furtherance of his personal gratification, not in furtherance of the hospital's business purposes.

¶16 The hospital is not, then, vicariously liable for Mr. Judici's torts, regardless of where they occurred. And the

trial court properly dismissed Ms. Hamilton's and the Smiths' vicarious liability claim against Sacred Heart.

## NEGLIGENT SUPERVISION

¶17 Ms. Hamilton and the Smiths also contend that Sacred Heart negligently supervised Mr. Judici.

■ ■ ¶18 The scope of employment limits an employer's vicarious liability for an employee's torts. It does not, however, limit an employer's liability for a breach of its own duty of care. *Niece*, 131 Wn.2d at 48. Negligence requires, of course, duty, breach, proximate cause, and injury. *Snyder v. Med. Serv. Corp. of E. Wash.*, 98 Wn. App. 315, 323, 988 P.2d 1023 (1999), *aff'd*, 145 Wn.2d 233, 35 P.3d 1158 (2001).

■ ¶19 Employers have a duty to prevent their employees from harming foreseeable victims. *Niece*, 131 Wn.2d at 48. But foreseeability requires that the alleged harm fall within the general field of danger covered by the employer's duty. *Shepard v. Mielke*, 75 Wn. App. 201, 206, 877 P.2d 220 (1994).

■ ¶20 Mr. Judici worked as a nursing assistant for Sacred Heart. But there is no showing here that Sacred Heart knew or should have known that Mr. Judici was a danger to its patients. There is no showing that he had engaged in similar acts before he committed the intentional torts alleged here. Ms. Hamilton and the Smiths have not established that Sacred Heart negligently supervised Mr. Judici. The court then properly dismissed the negligent supervision claim against Sacred Heart.

## NEGLIGENT FAILURE TO PROTECT

¶21 Ms. Hamilton and the Smiths next contend that Sacred Heart negligently failed to protect them. They argue that Sacred Heart had a special relationship with them because of their status as vulnerable patients. As a result of this relationship, they assert that Sacred Heart had a duty to protect them from Mr. Judici even though his actions exceeded the scope of his employment. They claim that the

hospital's failure to protect them from Mr. Judici resulted in the harm here.

¶22 Scope of employment does not limit an employer's liability for a breach of its *own* duty of care. *Niece*, 131 Wn.2d at 48. Generally, there is no duty to prevent a third party from intentionally harming another unless "a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *Petersen v. State*, 100 Wn.2d 421, 426, 671 P.2d 230 (1983). And "[t]he relationship between a hospital and its vulnerable patients is a recognized special relationship." *Niece*, 131 Wn.2d at 46 n.2 (citing *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 228, 802 P.2d 1360 (1991)). This special relationship imposes a duty on the hospital to protect patients from intentional harm by third parties. *Id.* This duty arises because the hospital is entrusted with the patients' well being. *Id.* at 50.

¶23 Sacred Heart argues that it did not have a "special relationship" with Ms. Smith or Ms. Hamilton because neither patient was vulnerable, profoundly disabled, or unable to protect herself. *Id.* at 42, 51 (group home had a duty to protect resident who had cerebral palsy and profound developmental disabilities); *Shepard*, 75 Wn. App. at 205 (convalescent center had a duty to protect resident who suffered brain damage and could not lock her door, screen visitors, or protect herself); *Hunt v. King County*, 4 Wn. App. 14, 481 P.2d 593 (1971) (hospital had a special relationship with a disturbed and suicidal patient).

¶24 The Smiths and Ms. Hamilton rely on the *Niece* holding for the proposition that Sacred Heart had a duty to protect them from all foreseeable harms. *Niece*, 131 Wn.2d at 51. But this case is distinguishable from *Niece* in several respects.

¶25 First, the patient in *Niece* was totally helpless. Ms. Niece had cerebral palsy and profound developmental disabilities that affected her ability to move and communicate. *Niece v. Elmview Group Home*, 79 Wn. App. 660, 662, 904 P.2d 784 (1995), *aff'd*, 131 Wn.2d 39, 929 P.2d

39 (1997). And her mental age ranged from the four- to six-year level. *Id.* Neither the Smiths nor Ms. Hamilton claim that level of disability. In fact, they claim no mental or physical disability at all.

¶26 Second, the Smiths and Ms. Hamilton make no showing, by expert or lay testimony, as to what Sacred Heart should or could have done to eliminate the contact here, most of which (and the most significant of which) occurred after Ms. Smith and Ms. Hamilton were discharged.

¶27 And, moreover, any special duty the hospital may have had to protect Ms. Hamilton and Ms. Smith is limited by the concept of foreseeability. *Christen v. Lee*, 113 Wn.2d 479, 492, 780 P.2d 1307 (1989). While "sexual assault by a staff member is not a legally unforeseeable harm," *Niece*, 131 Wn.2d at 51, there must be something more than just speculation and possibility. *See id.* at 49 ("an employer generally does not have a duty to guard against the possibility that one of its employees may be an undiscovered sexual predator"); *see also Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 869, 912 P.2d 1044 (1996) ("[F]oreseeability means foreseeability from the point of view of a reasonable person *who knows what the defendant's conduct will be*, but who does not know the specific sequence of events that ultimately will ensue therefrom" (emphasis added)), *aff'd*, 134 Wn.2d 468, 951 P.2d 749 (1998). Specifically, the question here is whether it was foreseeable that Mr. Judici would commit a tort against Ms. Hamilton and Ms. Smith. *Niece*, 131 Wn.2d at 51 n.10.

¶28 The sexual assaults alleged by the Smiths and Ms. Hamilton happened after the hospital discharged them and after Mr. Judici had abandoned his employment with the hospital. They claim, nevertheless, that Mr. Judici laid the groundwork for these sexual encounters by his making comments to and hugging Ms. Hamilton and by his hugging and kissing Ms. Smith while he was an employee. This is legally insufficient to predicate a cause of action against Sacred Heart absent some showing that it knew or should

have known of the potential for sexual abuse. And that showing is absent here. *Id.* at 52.

¶29 The superior court properly dismissed this suit against Sacred Heart.

SCHULTHEIS and BROWN, JJ., concur.