224 P.3d 808 (2009)
Elizabeth D. KALTREIDER, Appellant,
v.
LAKE CHELAN COMMUNITY HOSPITAL, Respondent.
George A. Menard, Defendant.
No. 27969-3-III.
Court of Appeals of Washington, Division 3.
December 22, 2009.
*809 Thomas Edward Janisch, Attorney at Law, Wenatchee, WA, for Appellant.
Robert F. Sestero II, Evans, Craven & Lackie, P.S., Spokane, WA, for Respondent.
BROWN, J.
¶ 1 Elizabeth Kaltreider was a voluntary resident at Lake Chelan Community Hospital (LCCH) for inpatient treatment of alcohol dependency. Ms. Kaltreider and one of LCCH's nurses engaged in sexual acts while she was a resident. Ms. Kaltreider filed a complaint, alleging various causes of action against LCCH and the nurse. The trial court summarily dismissed her claims. Ms. Kaltreider appeals the court's dismissal of her duty of protection cause of action against the hospital. She contends she was a vulnerable victim and the nurse's actions were a foreseeable harm, triggering the hospital's duty to protect. We disagree and affirm.

FACTS
¶ 2 On June 1, 2007, Ms. Kaltreider was admitted for inpatient treatment for alcohol dependency at LCCH. George Menard was a registered nurse employed by LCCH. Mr. Menard and Ms. Kaltreider began a flirtatious relationship. Mr. Menard would leave notes on Ms. Kaltreider's bed while she was away. Later, Ms. Kaltreider met Mr. Menard in a storage room, where they kissed and he fondled her. Also on more than one occasion, Mr. Menard got into Ms. Kaltreider's bed and placed his hands on her breasts and genitals and on one occasion digitally penetrated her vagina.
*810 ¶ 3 Mr. Menard made arrangements to spend the night with Ms. Kaltreider in a nearby motel following her discharge. The plan did not materialize. The pair, however, made plans to spend the Independence Day weekend at Ms. Kaltreider's home. Mr. Menard did not show up and ultimately told Ms. Kaltreider he would not be coming. The relationship then ended.
¶ 4 Ms. Kaltreider reported the relationship and on July 23, 2007, LCCH suspended Mr. Menard. This was LCCH's first knowledge of sexual misconduct by Mr. Menard. He ultimately resigned.
¶ 5 Ms. Kaltreider filed suit against the hospital and Mr. Menard in July 2008, contending, inter alia, LCCH owed a duty of protection from sexual misconduct.
¶ 6 LCCH successfully requested summary judgment dismissal of all claims. The court concluded Mr. Menard's conduct was not reasonably foreseeable as a matter of law. Ms. Kaltreider appealed.

ANALYSIS
¶ 7 The issue on appeal is whether the trial court erred in summarily dismissing Ms. Kaltreider's duty to protect claim. She contends she was a vulnerable victim and the harm resulting from the sexual contact was foreseeable.
¶ 8 A motion for summary judgment may be granted when there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. CR 56(c). All facts and reasonable inferences are viewed in the light most favorable to the nonmoving party. Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co., 115 Wash.2d 506, 516, 799 P.2d 250 (1990). We review a trial court's summary judgment order de novo. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
¶ 9 It is well settled that an essential element in any negligence action is the existence of a legal duty which the defendant owes to the plaintiff. Christensen v. Royal School Dist. No. 160, 156 Wash.2d 62, 66, 124 P.3d 283 (2005). The existence of a legal duty is a question of law and "`depends on mixed considerations of logic, common sense, justice, policy, and precedent.'" Id. at 67, 124 P.3d 283 (internal quotation marks omitted) (quoting Snyder v. Med. Serv. Corp., 145 Wash.2d 233, 243, 35 P.3d 1158 (2001)).
¶ 10 As a general rule, a person has no legal duty to prevent a third party from intentionally harming another. Niece v. Elmview Group Home, 131 Wash.2d 39, 43, 929 P.2d 420 (1997). Courts have recognized two types of "special relationships" that are exceptions to this general rule. A duty arises where, "(a) a special relation exists between the [defendant] and the third person which imposes a duty upon the [defendant] to control the third person's conduct, or (b) a special relation exists between the [defendant] and the other which gives the other a right to protection." Id.
¶ 11 Ms. Kaltreider relies on the first type of special relationship. Our Supreme Court found this type of special relationship in Niece. There, a developmentally disabled woman living in a private group home brought an action for damages against the home after she was sexually assaulted by a staff member. Id. at 41, 929 P.2d 420. The court held that the special relationship between a group home for developmentally disabled persons and its vulnerable residents "creates a duty of reasonable care, owed by the group home to its residents, to protect them from all foreseeable harms." Id. at 51, 929 P.2d 420. The court acknowledged that "[t]he duty to protect another person from the intentional or criminal actions of third parties arises where one party is `entrusted with the well being of another.'" Id. at 50, 929 P.2d 420 (quoting Lauritzen v. Lauritzen, 74 Wash.App. 432, 440, 874 P.2d 861 (1994)). This duty, the court said, "is limited only by the concept of foreseeability." Id. at 50, 929 P.2d 420 (citing Christen v. Lee, 113 Wash.2d 479, 492, 780 P.2d 1307 (1989)).
¶ 12 "Profoundly disabled persons are totally unable to protect themselves and are thus completely dependent on their caregivers for their personal safety." Id. at 46, 929 P.2d 420. Because the plaintiff in Niece was unable to protect herself when she submitted to the care of the group home, she was *811 completely vulnerable; thus the home owed her the duty of complete protection, which is limited by the foreseeability of the danger. Id.
¶ 13 Here, unlike in Niece, Ms. Kaltreider was not completely impaired. She voluntarily admitted herself to LCCH and engaged in consensual sexual acts with Mr. Menard. Moreover, in Smith v. Sacred Heart Medical Center, 144 Wash.App. 537, 545-46, 184 P.3d 646 (2008), the court noted that the woman in Niece was totally helpless, which it distinguished from the patients who claimed no mental or physical disability in the case before it. Because Ms. Kaltreider was not a vulnerable adult, LCCH did not have a duty to protect against the actions of a third party.
¶ 14 Moreover, Mr. Menard's actions were not foreseeable. In Smith, the court noted that sexual misconduct and resulting harm must be "reasonably foreseeable," and the foreseeability must be based on more than speculation or conjecture. Smith, 144 Wash.App. at 546, 184 P.3d 646. The employer "`generally does not have a duty to guard against the possibility that one of its employees may be an [undisclosed] sexual predator.'" Id. (quoting Niece, 131 Wash.2d at 49, 929 P.2d 420). In determining whether sexual misconduct by a staff member is foreseeable, this court may look to whether there were prior sexual assaults at the facility or by the individual in question. Niece, 131 Wash.2d at 50, 929 P.2d 420. Here, LCCH did not have knowledge of prior misconduct at the hospital or by Mr. Menard. Further, Mr. Menard's actions were outside the scope of his duties. Without evidence that Mr. Menard's conduct was known or reasonably foreseeable to LCCH, there was no duty to protect.
¶ 15 We conclude that Ms. Kaltreider was not a vulnerable adult nor were Mr. Menard's actions legally foreseeable. Thus, LCCH did not have a duty to protect Ms. Kaltreider from the actions of a third party. The court correctly concluded likewise and correctly dismissed Ms. Kaltreider's duty to protect claim.
¶ 16 Affirmed.
I CONCUR: KORSMO, J.
SCHULTHEIS, C.J. (dissenting).
¶ 17 Elizabeth Kaltreider contends that because she had a special relationship with Lake Chelan Community Hospital, it had a duty to protect her from sexual misconduct by a nurse at the hospital, which is a foreseeable harm. The majority holds that the hospital did not owe her a duty of protection because she was not totally helpless and the nurse's conduct was not foreseeable because the hospital had no knowledge of the nurse's abusive proclivities. I interpret the relevant special relationship authority to hold that the scope of the protected party's impairment establishes the scope of the duty of protection owed by the residential caregiver. Therefore, when the residential caregiver accepts a party into its care, the caregiver must protect the party from those dangers to which the party is vulnerable, which are known or should be known to the caregiver. Here, Ms. Kaltreider showed that she had a legislatively recognized vulnerability to sexual misconduct of which the hospital was aware or should have been aware. The special relationship that Ms. Kaltreider had with the hospital has no bearing on the hospital's knowledge of the particular nurse's proclivity for sexual misconduct. Therefore, I must respectfully dissent.
¶ 18 Central to the issue in this case is Niece v. Elmview Group Home, 131 Wash.2d 39, 929 P.2d 420 (1997), where a developmentally disabled woman was sexually assaulted by a staff member at a group home and brought a negligence action against the group home for its failure to protect her. The Washington Supreme Court held that the group home had a duty to take reasonable precautions to protect the woman from the foreseeable consequences of her impairments, including possible sexual assaults by staff. Id. at 45-46, 929 P.2d 420.
¶ 19 The majority in this case suggests that the group home in Niece owed the woman a duty only because she was completely *812 impaired, and no duty attaches here because Ms. Kaltreider was not similarly impaired. But the holding in Niece is still applicable the hospital owed Ms. Kaltreider the duty to take reasonable precautions to protect her from the consequences of her impairments, which included a particular vulnerability to sexual misconduct by the hospital's nursing staff.
¶ 20 The Niece court explained that passengers on common carrier transportation and hotel guests who are away from familiar surroundings may reasonably rely on their hosts to take those reasonable precautions that the passengers or guests would take at home. Id. at 46, 929 P.2d 420; see RESTATEMENT (SECOND) OF TORTS § 314A (1965). Similarly, "Profoundly disabled persons are totally unable to protect themselves and are thus completely dependent on their caregivers for their personal safety." Niece, 131 Wash.2d at 46, 929 P.2d 420. Because the plaintiff in Niece was unable to protect herself when she submitted to the care of the group home, she was completely vulnerable; thus the home owed her the duty of complete protection, which is limited by the foreseeability of the danger. Id.
¶ 21 Niece identifies the range of relative vulnerability found in a special relationship. It holds that the degree of the claimant's impairment is in direct relation to the scope of the duty of protection owed, which is limited by the foreseeability of the danger to which the protected party is vulnerable. In other words, the scope of the duty is to safeguard the resident from the foreseeable consequences of her impairment, which is known or should be known to the care provider. Shepard v. Mielke, 75 Wash.App. 201, 205, 877 P.2d 220 (1994).
¶ 22 The holding in Smith v. Sacred Heart Medical Center, 144 Wash.App. 537, 184 P.3d 646 (2008), does not require a different result. While the Smith court noted that the woman in Niece was totally helpless, which it distinguished from the patients who claimed no mental or physical disability in the case before it, that was not the basis for the court's conclusion that the hospital was not liable. 144 Wash.App. at 545-46, 184 P.3d 646. Instead, Smith was decided on foreseeability. Id. at 546, 184 P.3d 646.[1] In fact, Smith recognizes that the relationship between a hospital and its vulnerable patients imposes upon the hospital a duty on the hospital to protect patients from the foreseeable intentional harm by third parties. Id. at 545, 184 P.3d 646.
¶ 23 Ms. Kaltreider's lack of complete impairment does not excuse the hospital from a duty to protect her. It is well established that persons in an inpatient treatment setting have a special relationship with the hospital. Niece, 131 Wash.2d at 46, 929 P.2d 420 n. 2 (citing Hutchins v. 1001 Fourth Ave. Assocs., 116 Wash.2d 217, 228, 802 P.2d 1360 (1991)); see Caulfield v. Kitsap County, 108 Wash.App. 242, 253-54, 29 P.3d 738 (2001) (plaintiff was profoundly disabled, and entrusted to the care of a government agency); Hunt v. King County, 4 Wash.App. 14, 481 P.2d 593(1971) (hospital had a special relationship with a disturbed and suicidal patient). Thus, "special tort duties are based on the liable party's assumption of responsibility for the safety of another." Niece, 131 Wash.2d at 46, 929 P.2d 420 (citing Lauritzen v. Lauritzen, 74 Wash.App. 432, 440, 874 P.2d 861 (1994)). If the hospital knew that Ms. Kaltreider was particularly vulnerable to sexual misconduct by reason of her impairment, it owed her the duty to protect her from the consequences of that impairment, including her particular vulnerability.
*813 ¶ 24 Ms. Kaltreider argues that the hospital knew or should have known of the potential for sexual misconduct visited upon its chemical dependency treatment patients, which are particularly vulnerable to misconduct. I agree.
¶ 25 According to state nursing regulations, the role of a nurse in a treatment setting places the nurse in a position of power that is abused when the nurse uses or benefits from his professional status and the vulnerability of the patient due to the patient's condition or status as a patient. WAC 246-840-740(1), (4). Not only is sexual contact between a nurse and a patient prohibited but the prohibition also extends to "behaviors or expressions of a sexual or intimately romantic nature" regardless of whether or not the patient consents to the conduct. WAC 246-840-740(2). Further, given the "unique vulnerability of ... chemical dependency clients," nurses may not engage in sexual or romantic conduct with such a client for a period of at least two years even after the termination of the nursing services. WAC 246-840-740(4)(a). These regulations are a stark recognition of chemically dependent patients' vulnerability to the sexual misconduct of their treatment providers.
¶ 26 The regulations also recommend that the nurse "[c]onsult[] with supervisors regarding difficulties in establishing and maintaining professional boundaries with a given client." WAC 246-840-740(3)(b). Because the hospital is expected to give counsel to its nurses concerning appropriate conduct, it can be assumed that the hospital is aware of what constitutes misconduct.
¶ 27 The hospital argues that the regulations are not a guide or diagnostic formula for defining vulnerability. Nonetheless, the regulations do tend to show the treatment community's awareness of such a patient's vulnerability, which is a circumstance that the hospital knew or should have also known.[2]
¶ 28 Further, the legislature has recognized the vulnerability of chemically dependent inpatient treatment residents. RCW 9A.44.010(13); RCW 70.96A.020(4)(c). Any employee of a treatment facility who directly supervises such residents may be criminally liable for the crime of second degree rape if he engages in sexual intercourse with his patient, or for the crime of indecent liberties if he has sexual contact with his patient. RCW 9A.44.050(1)(e), .100(1)(e). These statutes not only recognize the vulnerability of persons in Ms. Kaltreider's position but also direct by implication that consent to sexual conduct is not a defense to her civil claim.
¶ 29 The criminal statutes and the WAC, together with the evidence in this case, easily establish that chemically dependent patients in an inpatient facility are vulnerable, and particularly so to inappropriate sexual or romantic liaisons. Therefore, the hospital owed Ms. Kaltreider a duty to protect her from sexual contact at the hands of its nurse if the nurse's conduct was foreseeable. Niece, 131 Wash.2d at 50, 929 P.2d 420.
¶ 30 "Ordinarily, foreseeability is a question of fact for the jury unless the circumstances of the injury `are so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" Seeberger v. Burlington N.R.R. Co., 138 Wash.2d 815, 823, 982 P.2d 1149 (1999) (quoting McLeod v. Grant County Sch. Dist. No. 128, 42 Wash.2d 316, 323, 255 P.2d 360 (1953)). Thus, the trial court's summary judgment can stand only if the sexual misconduct was "`so highly extraordinary or improbable as to be wholly beyond the range of expectability.'" Niece, 131 Wash.2d at 50, 929 P.2d 420 (quoting Johnson v. State, 77 Wash.App. 934, 942, 894 P.2d 1366 (1995)).
¶ 31 In Niece, the court held that a number of factors showed that "sexual abuse by staff at a group home for developmentally disabled persons may be a foreseeable hazard against which reasonable precautions must be taken." Id. at 51, 929 P.2d 420. *814 Those factors included "prior sexual assaults at [the group home], the [abandoned] earlier policy against unsupervised contact with residents, the opinion of [the disabled woman's] expert that such unsupervised contact is unwise, and Legislative recognition of the problem of sexual abuse in residential care facilities." Id. at 50-51, 929 P.2d 420 (footnote omitted). Of particular relevance in this case is legislative recognition of the problem of exploitation of inpatient residents in alcohol treatment.
¶ 32 Legislative recognition is demonstrated by the regulations prohibiting nurses from engaging in sexual relations or romantic conduct with particularly vulnerable alcohol-dependent patients, the regulation requiring private treatment hospitals to create policies to prevent abuse, and the criminal statutes recognizing that inpatient alcohol treatment residents cannot consent to sexual intercourse or sexual contact. WAC 246-840-740(1)(nursing regulations); WAC 246-324-035(1)(e)(treatment hospital regulations); RCW 9A.44.050(1)(e)(second degree rape); RCW 9A.44.100(1)(e)(indecent liberties).
¶ 33 Applying the principles in Niece, a jury reasonably could conclude that the hospital knew or should have known that its nurses were prohibited from engaging in any sexual or romantic conduct with the hospital's patients. Indeed, nurses are instructed to seek counsel from the hospital with respect to maintaining appropriate professional boundaries. WAC 246-840-740(3)(b). Based on the applicable statutes and regulations, sexual misconduct is not a legally unforeseeable risk against which reasonable precautions must be taken. Niece, 131 Wash.2d at 50-51, 929 P.2d 420.
¶ 34 Other than sexual harassment training, which the nurse denied having participated in, the only evidence in the record of the preventative measure taken by the hospital was to place the burden on the patients, making them promise not to engage in sexual relations. A jury could reasonably find such preventative measures inadequate.
¶ 35 The hospital argues that it had no knowledge that this particular nurse might engage in relations with Ms. Kaltreider and the nurse's conduct was outside the scope of his duties. This argument is relevant only to the extent that the hospital had a special relationship with its employee in Ms. Kaltreider's claim for the hospital's negligent supervision of the nurse. Id. at 48-52, 929 P.2d 420; see RESTATEMENT, supra, § 317 (addressing the duty of a master to control the conduct of a servant to protect third persons). Ms. Kaltreider does not appeal the dismissal of that particular claim.
¶ 36 I would conclude that the injury to Ms. Kaltreider was not legally unforeseeable and the court erred by holding otherwise.
NOTES
[1] In Smith two hospital patients were sexually assaulted by a hospital employee after they were discharged from the hospital and after the employee was no longer working for the hospital. 144 Wash.App. at 546, 184 P.3d 646. The patients in Smith nonetheless argued that the hospital should be liable for their injuries arising from the assaults due to the special relationship that the patients had with the hospital because the hospital employee "laid the groundwork for these sexual encounters by his making comments to and hugging [one patient] and by his hugging and kissing [the other patient] while he was an employee." Id. The Smith court concluded that the facts were "legally insufficient to predicate a cause of action against [the hospital] absent some showing that it knew or should have known of the potential for sexual abuse." Id. at 546-47, 184 P.3d 646. While the claimants in Smith did not make such a showing in that case, Ms. Kaltreider does here, as will be discussed, with an argument not made in Smith.
[2] See also WAC 246-324-035(1)(e) (requiring private chemical dependency hospitals to "develop and implement ... written policies and procedures consistent with this chapter and services provided" regarding "[p]rotecting against abuse and neglect"); WAC 246-324-010(1)(c)(identifying a wide array of conduct as abuse: "an act by any individual which injures, exploits or in any way jeopardizes a patient's health, welfare, or safety, including ... [s]exual use, exploitation and mistreatment through inappropriate touching [or] inappropriate remarks").