IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JOHN DOE, a single man; and JANE DOE, a single woman, | ) ) ) | No. 71123-7-I |
| Appellants, | ) ) | |
| v. | ) ) ) | |
| PHILLIP J. ZYLSTRA, M.D. and BARBARA ZYLSTRA, husband and wife, and the marital community composed thereof; MARK SPENCER, M.D. and CYNTHIA SPENCER, husband and wife and the marital community composed thereof; VERNON HALL, M.D. a single man; GLEN ISHAM; ANN DOE; TANYA DOE; SHERRI DOE; CORRIN DOE; KIM DOE; and SHAYNI DOE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | UNPUBLISHED OPINION   FILED: February 9, 2015 |
| Respondents. | ) ) ) | |

VERELLEN, J. — Appellants must support their assignments of error with authority, argument, and citation to the record. Here, John Doe and Jane Doe, former husband and wife, appeal from a summary judgment order dismissing their claims against several medical-clinic employees.[1] The Does principally contend that the employees

_____

[1] The clinic's employees include Dr. Phillip Zylstra, Dr. Vernon Hall, Dr. Mark Spencer, physician assistant Anne Doe, medical assistant Shayni Doe, registered nurse Sherri Doe, office manager Corrin Doe, referral coordinator Tonya Doe, and receptionist Kim Doe. Our references to "employees" do not include Glen Isham, a former medical assistant at the clinic.

owed the Does a legal duty of care to protect them from a medical assistant's intentional conduct. Because a patient must be vulnerable to create a special relationship, and because a special relationship is required to establish a legal duty of care in this context, the employees did not owe the Does a legal duty of care. The Does also fail to support any of their claims with citations to compelling authority or meaningful legal analysis. Accordingly, we affirm.

## FACTS

The Does received medical care and treatment at a medical clinic. In July 2007, the clinic hired Glen Isham as a medical assistant. The Department of Health (DOH) approved Isham's application and issued him a medical assistant certification.[2] Isham's job duties included escorting Jane Doe into an examination room, taking her vital signs, and documenting any medical complaints.

In February 2009, Isham and Jane Doe began a consensual sexual relationship. The Does separated on March 16, 2009. In June 2009, Isham moved in with Jane Doe. Isham voluntarily left the clinic in September 2009. The Does divorced in February 2010. Isham and Jane Doe married in September 2010.[3]

The Does sued Isham and the employees, but not the clinic, under various theories. The trial court entered summary judgment for the employees.[4]

The Does appeal.

---

[2] Isham's medical assistant application to DOH lists Dr. Zylstra as his delegator. DOH conducted a criminal background check on Isham for his medical assistant application, and no criminal record was reported.

[3] Isham and Jane Doe subsequently divorced in 2013.

[4] The Does proceeded to trial against Isham. Isham did not appear at trial and the trial court entered judgment for the Does in the amount of $1,019,800.

## ANALYSIS

Appellants must support their assignments of error with argument and pertinent authority.[5] We generally will not consider issues that do not comply with this requirement.[6] Here, the Does fail to support any of the issues raised in their briefs with compelling authority or meaningful legal analysis.

We review a summary judgment order de novo and view "the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party."[7] Summary judgment is proper where there are no genuine issues of material fact.[8] "A material fact is one that affects the outcome of the litigation."[9] "Legal duty is a question of law which we review de novo."[10]

---

[5] RAP 10.3(a)(6) ("The [brief should contain] argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989); In re Marriage of Arvey, 77 Wn. App. 817, 819 n.1, 894 P.2d 1346 (1995).

[6] McKee v. Am. Home Products, Corp., 113 Wn.2d 701, 705, 782 P.2d 1045 (1989) ("We will not consider issues on appeal that are not raised by an assignment of error or are not supported by argument and citation of authority."); Saviano v. Westport Amusements, Inc., 144 Wn. App. 72, 84, 180 P.3d 874 (2008) ("We do not address issues that a party neither raises appropriately nor discusses meaningfully with citations to authority."); King County v. Seawest Inv. Assocs., LLC, 141 Wn. App. 304, 317, 170 P.3d 53 (2007) ("We will not consider an issue absent argument and citation to legal authority.").

[7] Michak v. Transnation Title Ins. Co., 148 Wn.2d 788, 794, 64 P.3d 22 (2003). The Does contend that the trial court did not apply the proper summary judgment standard because it concluded that the Does' experts' opinions "do not really affect the court's decision here; and the court and appellate court can take portions of the declarations with a grain of salt." CP at 141-42. Because our review is de novo, the Does' contention provides no basis for any relief on appeal.

[8] CR 56(c).

[9] Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 789, 108 P.3d 1220 (2005).

[10] Webb v. Neuroeducation Inc., P.C., 121 Wn. App. 336, 346, 88 P.3d 417 (2004).

3

The Does challenge the trial court's dismissal of their medical negligence claim on summary judgment. The Does contend that the employees' conduct fell below the standard of care expected of a reasonably prudent health care provider. We disagree. Because the Does do not provide any compelling authority or meaningful legal analysis that the employees owed a duty to protect them from Isham's intentional misconduct, their medical negligence claim fails.

A medical negligence claim requires "'duty, breach, causation, and damages.'"[11] Washington cases addressing sexual misconduct in a health care setting hold that the duty of a medical clinic, or its employees, to protect patients from a third party's intentional conduct requires a special relationship with the patient.[12] A special relationship exists if the patient is "vulnerable, profoundly disabled, or unable to protect herself."[13] Here, the Does do not cite any of these cases and do not argue that a special relationship arose. A patient seeking medical care at a clinic does not, by itself, establish a special relationship required to establish a legal duty of care.[14]

---

[11] Rounds v. Nellcor Puritan Bennett, Inc., 147 Wn. App. 155, 162, 194 P.3d 274 (2008) (quoting Colwell v. Holy Family Hosp., 104 Wn. App. 606, 611, 15 P.3d 210 (2001)).

[12] See, e.g., Niece v. Elmview Grp. Home, 131 Wn.2d 39, 43, 929 P.2d 420 (1997) ("'[T]here is no duty to prevent a third party from intentionally harming another unless 'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.'" (internal quotation marks omitted) (quoting Hutchins v. 1001 Fourth Ave. Assocs., 116 Wn.2d 217, 227, 802 P.2d 1360 (1991)); Kaltreider v. Lake Chelan Cmty. Hosp., 153 Wn. App. 762, 765-66, 224 P.3d 808 (2009); Smith v. Sacred Heart Med. Ctr., 144 Wn. App. 537, 545, 184 P.3d 646 (2008).

[13] Smith, 144 Wn. App. at 545.

[14] See Niece, 131 Wn.2d at 43-44; Kaltreider, 153 Wn. App. at 765; Smith, 144 Wn. App. at 545.

4

Additionally, even assuming that the employees owed a special duty to protect the Does, that duty "is limited by the concept of foreseeability."[15] The "sexual misconduct and resulting harm must be 'reasonably foreseeable,' and the foreseeability must be based on more than speculation or conjecture."[16] An employee's sexual misconduct may be foreseeable if there have been similar prior incidents at the clinic or prior acts by the employee.[17] Absent such evidence, the Does fail to establish that Isham's sexual misconduct was foreseeable.

Two cases are particularly instructive. First, in Kaltreider v. Lake Chelan Community Hospital, a patient voluntarily engaged in sexual relations with a nurse on hospital property.[18] The patient sued the hospital, alleging that the hospital owed her a duty of protection from sexual misconduct. Kaltreider held that the hospital "did not have a duty to protect" her against a third party's actions because the patient "was not a vulnerable adult."[19] The hospital did "'not have a duty to guard against the possibility that one of its employees may be an [undisclosed] sexual predator'" because the nurse's actions were unforeseeable.[20] Second, in Smith, a nursing assistant hugged and kissed two patients on several occasions at a hospital. The patients later voluntarily engaged in sexual relations with the nursing assistant off the premises after the patients had been discharged and after the nursing assistant had left his

---

[15] Smith, 144 Wn. App at 546; Kaltreider, 153 Wn. App. at 766-67.

[16] Kaltreider, 153 Wn. App. at 766-67 (quoting Smith, 144 Wn. App. at 546).

[17] Id. at 767.

[18] 153 Wn. App. 762, 224 P.3d 808 (2009).

[19] Id. at 766.

[20] Id. at 767 (alteration in original) (internal quotation marks omitted) (quoting Smith, 144 Wn. App. at 546).

5

employment. The patients sued the hospital, alleging that the hospital owed them a duty of protection and that while at the hospital, the nursing assistant "laid the groundwork" for the sexual encounters.[21] Smith held that the hospital did not owe a duty to protect because the patients were not vulnerable and consensually engaged in sexual relations with the nursing assistant both on and off the hospital's property.[22]

Here, consistent with Kaltreider and Smith, Jane Doe was not a vulnerable patient. No evidence in the record suggests that Jane Doe was "vulnerable, profoundly disabled, or unable to protect herself."[23] As in Smith, the consensual sexual activity occurred off the clinic's property. Importantly, the Does cite no authority that a medical clinic's employees have a duty to prevent or protect a nonvulnerable patient from engaging in consensual sexual relations with a medical assistant off the clinic's property. As in Kaltreider, no evidence in the record suggests that the employees had knowledge of prior sexual misconduct at the clinic or by Isham.[24] Therefore, the Does fail to establish the employees owed a legal duty of care to protect them from Isham's intentional misconduct.

Further, without citing any authority, the Does contend that Isham groomed Jane Doe for a sexual relationship by engaging in inappropriate communications, inappropriate touching, and extended visits at the clinic. But their contention is equivalent to the hugging and kissing in Smith. Smith rejected the claim that a legal

---

[21] Smith, 144 Wn. App. at 546.

[22] Id. at 545-46.

[23] Id. at 545.

[24] Kaltreider, 153 Wn. App. at 767.

duty of care extends to a hospital's employees because the "groundwork" for the sexual encounters occurred at the hospital.[25]  Therefore, the Does' grooming theory fails.

The Does contend that under state regulations, the employees owed them a legal duty of care to report Isham's sexual relationship with Jane Doe to DOH.  We disagree.  The Does cite no authority that any administrative regulations create a legal duty of care owed to them by the employees.  WAC 246-16-100 merely precludes a health care provider from engaging in sexual misconduct with a patient, and WAC 246-16-235 establishes mandatory reporting for license holders in certain circumstances.  But the duty to report is limited to a license holder's "actual knowledge" of "[a]ny conviction, determination, or finding that another license holder has committed an act that constitutes unprofessional conduct."[26]  A "'[c]onviction' means a court has decided a person is guilty of any gross misdemeanor or felony."[27]  A "'[d]etermination or finding' means a final decision by an entity required or requested to report" under the Washington Administrative Code.[28]  Here, no conviction, determination, or finding triggered a duty to report.

The Does also contend that Isham's longer than usual intake sessions with Jane Doe triggered a duty to report.  But that evidence does not constitute a "conviction," "determination," or "finding" under the Washington Administrative Code.  And while the Does' experts discuss a health care provider's ethical obligations, the Does provide no

---

[25] Smith, 144 Wn. App. at 546.

[26] WAC 246-16-235(1)(a).

[27] WAC 246-16-210(2).

[28] WAC 246-16-210(3).

authority that a legal duty to report Isham's unprofessional conduct arose. Thus, their duty to report claim fails.

The Does generally contend that the employees negligently supervised Isham. We disagree. The Does did not sue the employer. The Does neither cite authority nor provide meaningful legal analysis that a negligent supervision claim lies against employees.[29] The Does cite no authority that an actionable duty arises because a physician is a medical assistant's delegator. No evidence in the record suggests that the employees had prior knowledge of Isham's sexual misconduct or that Isham "presented a risk of harm" to patients.[30] Therefore, the Does do not establish any genuine issue of material fact regarding an alleged duty of the employees to supervise.

The Does suggest in passing that the employees negligently hired Isham who the employees knew, or should have known, was unfit to work with patients. We disagree. The Does did not sue the employer, and they cite no authority that the employees are liable for negligently hiring Isham.[31] Further, the employees verified Isham's medical assistant license, interviewed him, and checked his references. DOH reported no

---

[29] Washington courts uniformly hold that employers—not employees—may be liable for negligently supervising an employee. Niece, 131 Wn.2d at 48-49 ("An *employer* is not liable for negligent supervision of an employee unless the *employer* knew, or in the exercise of reasonable care should have known, that the employee presented a risk of danger to others." (emphasis added)); Smith, 144 Wn. App. at 544; Briggs v. Nova Servs., 135 Wn. App. 955, 966, 147 P.3d 616 (2006) ("'An *employer* can be liable for negligently supervising an employee.'" (emphasis added) (quoting Herried v. Pierce County Pub. Transp. Benefit Auth. Corp., 90 Wn. App. 468, 475, 957 P.2d 767 (1998))).

[30] Briggs, 135 Wn. App. at 967.

[31] Washington courts also uniformly hold that employers—not employees—may be liable for negligently hiring an employee. See, e.g., Haubry v. Snow, 106 Wn. App. 666, 679, 31 P.3d 1186 (2001); Lester v. Town of Winthrop, 87 Wn. App. 17, 26, 939 P.2d 1237 (1997).

criminal history. No evidence in the record suggests that the employees, at the time of hiring, knew or in the exercise of ordinary care should have known that Isham was unfit for employment as a medical assistant or likely to cause harm. Therefore, the Does' negligent hiring claim fails.

As to the Does' remaining claims, the Does provide no pertinent authority, argument, or citation to the record to support them. Therefore, we decline to address them.[32]

We affirm.

WE CONCUR:

_Trickey, J_

_Spearman, C.J._

2015 FEB -9 AM 11:09  COURT OF APPEALS DIV STATE OF WASHINGTON

---

[32] See, e.g., Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (stating that claims not supported by reference to the record or citation to authority are not considered on appeal); McKee, 113 Wn.2d at 705.