[No. 12159-3-III. Division Three. July 20, 1995.]

MARTY D. SUNDBERG, ET AL., *Appellants*, v. JAMES W. EVANS, ET AL., *Defendants*, GRANT COUNTY, ET AL., *Respondents*.

*Carol Baker*, for appellants.
*Stephen J. Hallstrom*, for respondents.

SWEENEY, J. — Marty and Linda Sundberg wanted to develop a recreational vehicle (RV) park in Sunland Estates, Grant County. RV parks require commercial zoning. Apparently before buying the land (it is not clear from the record when the lots were purchased), they talked to Billie Sumrall,[1] a secretary, at the Grant County Planning Department and asked about the zoning of the lots they were considering. What she said, and intended they understand, is at odds with what they heard, and understood.

The recollections and understandings of the parties are summarized in pretrial depositions and affidavits. Ms. Sumrall testified that to determine whether any proposed use was compatible with the zone, she would consult the zoning ordinance and then also refer to the County's comprehensive plat. The zoning ordinance divided Sunland Estates into three commercial categories: general-commercial, recreation-commercial, and neighborhood-commercial. She concluded that the ordinance did not clearly show a commercial designation. A 1971 Grant County zoning map showed Sunland Estates as recreational while the comprehensive plat indicated the lots which the Sundbergs proposed to buy were commercial.

Asked hypothetically what she would have told the

---

[1] We note from the record this is the correct spelling of Ms. Sumrall's name.

Sundbergs if they came to the Planning Department and asked about the designation of the lots, Ms. Sumrall answered: "I would tell them [the] underlying zoning was recreation but that the plat designated those lots as being commercial". She testified that at the time the Sundbergs came to the Planning Department she was not sure of the permitted use. When asked specifically what she told the Sundbergs, Ms. Sumrall answered she told them about the procedures necessary to change the zoning. She indicated to them that "the commercial portion of the plat [was not] really the problem . . ." because they needed to first obtain the Board of Adjustment's approval of the "binding site plan" required of RV parks. Ms. Sumrall helped the Sundbergs complete the necessary application. The Board denied the application after neighboring landowners complained about potential noise and traffic.

In an affidavit, Mr. Sundberg swears that he specifically spoke to Ms. Sumrall about the zoning of the Sunland Estates' lots. And he was "assured that the lots [he was] interested in purchasing were designated commercial . . .". At his deposition, he testified "it was on their plat maps and everything—that this was zoned commercial, no restrictions".

The Sundbergs sued Ms. Sumrall and the County for negligence based on Ms. Sumrall's representations. Trial was scheduled for December 2, 1991. But during a pretrial conference, the trial judge suggested to the parties that Ms. Sumrall's representations were not representations of fact and therefore probably not actionable: "I would conclude she was of the view that her opinion was correct . . . that the plat did override the zoning ordinance . . .. I don't think that's actionable . . .. She factually represented what the plat said and the zone said, and she gave him an opinion which she held to be true . . .".

The Sundbergs' attorney also suggested the absence of any material factual dispute:

> if that's the view that you're going to take, I don't see what we'd be gaining by going through the trial . . . .. I don't think

anybody's saying she did anything different . . . . I think she's going to say—if she pointed at the map at all, is going to say, look, that's open-space recreational, but here's a plat map that says it's commercial, and because of that I think you can use it commercially. I don't think anybody's arguing about that point.

The court expressed concern about resolving factual issues and offered to proceed to trial. To which the Sundbergs' attorney replied: "I think I've told you what all he relied on . . . . I'm never going [to] develop any more facts than that. I can represent that to you right now". The court again offered to try the case. And the Sundbergs' attorney responded that "[w]hat we would be doing here today is putting on those same witnesses and having them say the same things all over again . . .".

The County's attorney then asked for a stipulation that the court was being asked for "a legal opinion as to the sufficiency of the facts in the nature of a summary judgment . . .". The Sundbergs' attorney responded: "I think everything's been done that we could do". The court noted that "[b]ased on the facts that everybody agrees upon I would be prepared to grant summary judgment . . .". The court then entered summary judgment and dismissed the case, although neither party had moved for summary judgment.

Through new counsel, the Sundbergs appeal. We find unresolved factual questions and reverse and remand.

## Discussion
### Summary Judgment

■ CR 56 contemplates a summary judgment motion being filed and served by the moving party. CR 56(a) (a party may move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof). Here the County did not move for summary judgment. The "hearing" which preceded the summary dismissal was held on the day trial was scheduled, not 14 days prior to trial as required by CR 56(c).

■ The Sundbergs argue they were denied notice of the hearing and an opportunity to be heard. The Sundbergs certainly did not receive notice of a motion for summary judgment; but neither did they object to the trial court's actions, nor insist on proceeding to trial. In fact, they tacitly agreed to the court's summary resolution. Any error in failing to give the prescribed notice was invited error and therefore not grounds for an appeal.[2]

■■ We review the court's dismissal of the Sundbergs' action as we would any summary judgment motion—de novo.[3] The standard of review for summary judgements is well settled and need not be repeated here.[4] We note, because of its significance here, that evidence is considered in a light most favorable to the Sundbergs because they are the nonmoving party.[5]

The parties' contentions here frame a three-step analysis. First, does the County have a duty? Second, were Ms. Sumrall's acts discretionary, in which case the County is immune, or were they instead ministerial? And finally, if her acts were ministerial, were they in response to a public duty, in which case the County is not liable, or were they in response to a particularized duty owed to the Sundbergs?

## Duty

The County argues that it and its employees are immune from liability under various exceptions to the Legislature's general abrogation of sovereign immunity. The first question, however, is whether a duty is owed at

[2]*Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 77, 684 P.2d 692 (1984) (party cannot seek review of an alleged error which the party invited); *Bellevue v. Kravik*, 69 Wn. App. 735, 739, 850 P.2d 559 (1993) (doctrine of invited error prevents party from complaining on appeal about issue it created at trial).

[3]*Grimsrud v. State*, 63 Wn. App. 546, 548, 821 P.2d 513 (1991).

[4]*Meaney v. Dodd*, 111 Wn.2d 174, 177-78, 759 P.2d 455 (1988).

[5]*Stephens v. Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

all,[6] because without a duty the question of immunity never arises. In *Rogers v. Toppenish*,[7] the city building inspector assured a buyer that a parcel of property he wanted to buy was zoned for apartment houses. The inspector's duties included the duty to provide accurate zoning information, if asked. We held that the inspector's assurance was an inaccurate statement of fact and affirmed the judgment entered in favor of the buyer.[8] Grant County and its employees therefore had a duty to provide accurate information, if they chose to answer a zoning inquiry.

## Sovereign Immunity—Discretionary/Ministerial

The next question is whether, despite the existence of this duty, the County is nonetheless immune. The general rule is that it is not. The Legislature abolished sovereign immunity in this state in 1961.[9] But in *Evangelical United Brethren Church v. State*,[10] our Supreme Court created an exception. The court recognized that discretionary processes within the framework of government "cannot and should not, from the standpoint of public policy and the maintenance of the integrity of our system of government, be characterized as tortious however unwise, unpopular, mistaken, or neglectful a particular decision or act might be".[11]

It set out four preliminary questions to distinguish discretionary and ministerial acts:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or

---

[6]*Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988).

[7]23 Wn. App. 554, 596 P.2d 1096, *review denied*, 92 Wn.2d 1030 (1979).

[8]*Rogers*, 23 Wn. App. at 558.

[9]Laws of 1961, ch. 136, § 1; RCW 4.96.010.

[10]67 Wn.2d 246, 407 P.2d 440 (1965).

[11]*Evangelical*, 67 Wn.2d at 253.

objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?[12]

Affirmative answers to these questions mean that the challenged act can, with reasonable assurances, be classified as a discretionary governmental process.[13] Our answer to the first question is dispositive.

The governmental act here had nothing to do with the type of discretionary function contemplated by *Evangelical*. Ms. Sumrall was providing information. The parties here disagree over what her representations were and whether they were accurate. But neither of those questions involves the kind of discretionary governmental decision for which *Evangelical* provides immunity. Ms. Sumrall's representations are not therefore immune under the discretionary governmental immunity exception.

## Public Duty

The next question is whether the County is nonetheless protected from liability by the public duty doctrine. The public duty doctrine "precludes liability for a public official's negligent conduct unless it is established that ' "the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general . . ." ' ".[14]

## Special Relationship

Several exceptions to the public duty doctrine ex-

---

[12]*Evangelical*, 67 Wn.2d at 255.

[13]*Evangelical*, 67 Wn.2d at 255.

[14]*Johnson v. State*, 68 Wn. App. 294, 296, 841 P.2d 1254 (1992) (quoting *Atherton Condominium Apartment-Owners Ass'n Bd. v. Blume Dev. Co.*, 115 Wn.2d 506, 529, 799 P.2d 250 (1990)), *review denied*, 121 Wn.2d 1018 (1993); *Noakes v. Seattle*, 77 Wn. App. 694, 697, 895 P.2d 842 (1995).

ist.[15] Only one is relevant here, and it is not truly an exception to the public duty doctrine, but rather a particularized duty to an individual rather than one owed to the public. It is the so-called special relationship exception. A special relationship is created when (1) there is privity or direct contact between the public official and the injured plaintiff; (2) the public official gives express assurances; and (3) the plaintiff justifiably relies on those assurances.[16] Because the parties disagree over what representations were made, we cannot decide as a matter of law whether a special relationship arose or not.

In his affidavit, Mr. Sundberg says he was told the lots were commercial. His deposition, which for reasons unclear to us the trial court did not consider, says that Ms. Sumrall "indicated . . . this was zoned commercial, no restrictions". Ms. Sumrall testified that she sent the Sundbergs to the Board of Adjustment for approval of their binding site plan and did not consider the zoning to be the determinative issue. She said she would have told them the underlying zoning was recreational but the plat designation was commercial. Did she express a general opinion or perhaps give advice? Or did she give express assurances which the Sundbergs had a right to rely on? Ms. Sumrall's response here may have been solely her opinion about the zoning and plat inconsistencies. On the other hand, if we view the evidence in the light most favorable to Mr. Sundberg, her comments were express assurances the lots were commercial. These are questions for the jury. These are factual issues which should not have been resolved by summary judgment.

The lawyers suggested and the trial court apparently accepted that the facts were clear. But the record suggests otherwise. During the pretrial hearing, the County's at-

---

[15]*Bailey v. Forks*, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987), *modified* 753 P.2d 523 (1988).

[16]*Taylor*, at 166; *Smith v. State*, 59 Wn. App. 808, 813, 802 P.2d 133 (1990), *review denied*, 116 Wn.2d 1012 (1991); *Pioneer Nat'l Title Ins. Co. v. Spokane County*, 52 Wn. App. 869, 874, 765 P.2d 36 (1988).

torney stated: "I've been discussing this—Mrs. Sumrall tells me that she expressed the contrary opinion—that she had not given an opinion—expressed the contrary opinion . . .".

The trier of fact must also determine whether the express assurances, if any, were such that the Sundbergs could reasonably rely on them.[17] Ms. Sumrall may not have shared the same level of responsibility as the zoning administrator in *Rogers*. She was a secretary. The Sundbergs may not have reasonably relied on the information she gave without seeking further legal assistance.

The summary judgment order of dismissal is reversed; the matter is remanded for trial.

THOMPSON, C.J., and SCHULTHEIS, J., concur.

Review denied at 128 Wn.2d 1008 (1996).

[17]*Noakes*, 77 Wn. App. at 699.