# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BRADY HORENSTEIN, | No. 60121-4-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| EXECUTIVE ETHICS BOARD, | |
| Respondent. | |

CHE, J. — Brady J. Horenstein appeals the trial court's order dismissing with prejudice his claims against the State's Executive Ethics Board (Ethics Board) and the trial court's denial of Horenstein's motion for reconsideration.

Horenstein brought allegations of negligence, negligent investigation, and libel—a form of defamation—against the Ethics Board. He alleged that the Ethics Board failed to conduct a fair and impartial ethics investigation after it received a complaint from Horenstein's state employer, which raised conflict of interest and misuse of state resources concerns.

The Ethics Board moved to dismiss Horenstein's complaint for failure to state a claim under CR 12(b)(6). The trial court found that no negligent investigation cause of action existed when the Ethics Board was acting pursuant to its duties under RCW 42.52.350. The trial court additionally found that the Ethics Board was entitled to quasi-prosecutorial and quasi-judicial immunity from a general negligence cause of action related to the challenged Ethics Board

action. Finally, the trial court found that the Ethics Board had absolute immunity from a defamation cause of action related to its publication responsibilities. The trial court accordingly dismissed all three of Horenstein's claims with prejudice.

Horenstein argues that the trial court erred in dismissing his three claims and that we should reverse the dismissal of the claims.

We hold that, even assuming without deciding that the Ethics Board was not immune, (1) Horenstein fails to plead a common law negligence cause of action, (2) Horenstein's negligent investigation claim is not a cognizable cause of action in these circumstances, and (3) Horenstein fails to plead a defamation cause of action.

Accordingly, we affirm the trial court's granting of the Ethics Board's motion to dismiss Horenstein's three claims.

FACTS

*The Executive Ethics Board*

The Executive Ethics Board is created under the ethics in public service act (EPSA), chapter 42.52 RCW. RCW 42.52.350. Five members, appointed by the governor, comprise the Ethics Board, and each member serves five-year terms. RCW 42.52.350(1), (2). The Ethics Board is responsible for enforcing the EPSA and any rules adopted under the chapter with respect to statewide elected officers, executive branch officers and employees, boards and

commissions, and higher education institutions.[1] RCW 42.52.360(1). RCW 42.52.360 provides

both mandatory and discretionary responsibilities of the Ethics Board, including that:

> (3) The [Ethics Board] shall:
> (a) Develop educational materials and training;
> (b) Adopt rules and policies governing the conduct of business by the board, and adopt rules defining working hours for purposes of RCW 42.52.180[2] and where otherwise authorized under [the EPSA];
> (c) Issue advisory opinions;
> (d) Investigate, hear, and determine complaints by any person or on its own motion;
> (e) Impose sanctions including reprimands and monetary penalties;
> (f) Recommend to the appropriate authorities suspension, removal from position, prosecution, or other appropriate remedy; and
> (g) Establish criteria regarding the levels of civil penalties appropriate for violations of this chapter and rules adopted under it.
> (4) The board may:
> (a) Issue subpoenas for the attendance and testimony of witnesses and the production of documentary evidence relating to any matter under examination by the board or involved in any hearing;
> (b) Administer oaths and affirmations;
> (c) Examine witnesses; and
> (d) Receive evidence.

A person may file a complaint with the Ethics Board. RCW 42.52.410(1). If the Ethics

Board has reason to believe a person has or is violating the EPSA or rules promulgated under it,

the Ethics Board may issue a complaint. RCW 42.52.410(2).

When the Ethics Board receives a complaint, the Ethics Board's staff "shall investigate

[it]." RCW 42.52.420. The Ethics Board's promulgated rules define the "investigation" as "fact

---

[1] The "legislative ethics board," also created under the EPSA, is responsible for enforcing the chapter and any rules adopted under it with respect to members and employees of the legislature. RCW 42.52.320. The commission on judicial conduct is authorized to enforce the EPSA and any rules adopted under it with respect to state officers and employees of the judicial branch. RCW 42.52.370.

[2] RCW 42.52.180 is titled, "Use of public resources for political campaigns."

finding conducted prior to a dismissal or reasonable cause determination." WAC 292-100-007.[3] During the course of the investigation, the Ethics Board or its executive director "may issue subpoenas to persons to appear and give testimony, and may require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the investigation." WAC 292-100-080.

The results of the investigation must be reduced to writing. RCW 42.52.420(2). Staff of the Ethics Board, provided by the Office of the Attorney General, then either determine that the complaint should be dismissed or recommend to the Ethics Board that reasonable cause exists or does not exist to believe that there has been or there continues to be a violation under the EPSA and rules adopted under the chapter. RCW 42.52.350(8); RCW 42.52.420. Dismissal of the complaint may be based on any of the following findings:

> (a) Any violation that may have occurred is not within the jurisdiction of the board;
> (b) The complaint is obviously unfounded or frivolous; or
> (c) Any violation that may have occurred does not constitute a material violation because it was inadvertent and minor, or has been cured, and, after consideration of all of the circumstances, further proceedings would not serve the purposes of this chapter.

RCW 42.52.425(1). If the Ethics Board determines that there is reasonable cause that a violation of the chapter or rules has occurred, "a public hearing on the merits of the complaint shall be held." RCW 42.52.430(1). The Ethics Board's determination that reasonable cause either exists or does not exists must be provided to both the complainant and the person named in the complaint. RCW 42.52.420(3).

---

[3] Pursuant to RCW 34.05.210, we take judicial notice of properly filed and published rules. RCW 34.05.210(9).

The Ethics Board has promulgated various rules concerning "complaints, investigations, and hearings pursuant to [many of its statutory duties]." *See generally* WAC 292-100; WAC 292-100-005. For example, WAC 292-100-041(1) provides, "During the course of an investigation, the board staff will give the respondent(s) a copy of the complaint or a summary of the complaint, and an opportunity to respond to the allegations."

*Horenstein's Complaint*

In 2024, Horenstein filed a complaint against the Ethics Board, raising negligence, negligent investigation, and libel causes of action.

According to Horenstein, while previously employed by the Department of Social and Health Services (DSHS), Horenstein also owned and operated "a company that operates and provides automated legislation tracking software." Clerk's Papers (CP) at 2. Horenstein alleged that he had owned and operated the company since 2006 and had disclosed his business interest on his resume, during an interview, and to his DSHS supervisors.

In 2022, Washington's Office of Financial Management encouraged state agencies, including DSHS, to use the software without Horenstein's knowledge. In June 2022, DSHS received an anonymous complaint regarding a potential conflict of interest between Horenstein's outside business and his role at DSHS. Horenstein was the Legislative Manager for the Division of Child Support at DSHS at the time of the complaint.

In July, DSHS opened an investigation and met with Horenstein to discuss his outside employment. Horenstein contacted the Ethics Board's executive director "to clarify [] ethics questions." CP at 3. According to Horenstein, the Ethics Board's executive director "state[d] that contract approval by the Ethics Board was not required." CP at 3. In October, DSHS closed

the investigation, finding no conflict of interest violations or misuse of state resources violations.

Horenstein's appointing authority at DSHS then signed an agency "Outside Employment" form

and denoted no conflict of interest.

Around December, DSHS filed a complaint with the Ethics Board alleging both conflict

of interest and misuse of state resources violations for the same actions the Ethics Board's

executive director had assured Horenstein were not actionable. In May 2023, the Ethics Board

found reasonable cause for an ethics violation "based upon 'personal searches.'" CP at 3.

According to Horenstein, the board made this determination without an Ethics Board staff

recommendation. The Ethics Board notified Horenstein of its finding.

Over a week later, in a newsletter published on the Ethics Board's website, the Ethics

Board "noted that the Board had found reasonable cause in [] Horenstein's case." CP at 4.

According to Horenstein, "[t]he statement was false because reasonable cause did not exist to

find a violation." CP at 5. Horenstein followed up with Ethics Board staff, seeking clarification

on what "personal searches" were at issue, whether the Ethics Board had made a mistake,

and whether a reconsideration process existed. CP at 5. In October 2023, the Ethics Board

reversed its "reasonable cause" determination, "acknowledging the complaint's unfounded

nature." CP at 5.

Horenstein brought three causes of action against the Ethics Board. First, Horenstein

raised a negligence claim based on the Ethics Board having a duty to (1) "[c]onduct a fair and

impartial ethics investigation in accordance with RCW 42.52 and WAC 292-100,"

(2) "[e]xercise independent judgment and not approve allegations from other agencies absent

independent investigation," and (3) "[a]fford [Horenstein] due process, including the opportunity

to respond to allegations and provide relevant information."[4]  CP at 4-5.  Second, Horenstein

alleged that the Ethics Board had and breached a duty "to act in good faith and thoroughly

investigate to determine the facts upon which good faith judgment can be formulated."  CP at 7.

Third, Horenstein raised a libel cause of action[5] based on the Ethics Board's "false statement in

writing stating that reasonable cause existed to proceed on an ethics complaint against

[Horenstein]."  CP at 7.

Horenstein alleged that the Ethics Board's actions caused him emotional distress,

reputational damage, and constructive dismissal, which were all foreseeable harms.

The Ethics Board moved to dismiss Horenstein's complaint for a failure to state a claim

under CR 12(b)(6).  The trial court agreed with the Ethics Board that no negligent investigation

---

[4] Horenstein alleged that the Board violated such duties by the following:

    i.       Accepting an "agency referral" from DSHS without due diligence, ignoring red flags regarding its validity and potential for retaliation.
    ii.      Failing to independently verify information in the DSHS investigation report, which contained errors and factual inaccuracies.
    iii.    Failing to interview [Horenstein] or provide him with a proper opportunity to address the specific allegations of concern to the Board and its staff.
    iv.    Basing its initial reasonable cause determination on flawed information and misapplying ethics laws and Board policies.
    v.     Failing to follow the staff recommendation as stated in RCW 42.52.420(2).
    vi.    Excluding key Board staff from the closed session where [Horenstein]'s case was discussed, hindering full understanding of the matter.

CP at 6.

[5] Libel is a form of defamation.  *See Emerson v. Dep't of Corr.*, 194 Wn. App. 617, 639-40, 376 P.3d 430 (2016) (describing the elements for "[a] defamation claim for either libel or slander" as one and the same); Restatement (Second) of Torts § 568 ("Libel consists of the publication of defamatory matter by written or printed words, by its embodiment in physical form or by any other form of communication that has the potentially harmful qualities characteristic of written or printed words.").

cause of action existed when the Ethics Board was acting pursuant to its duties under RCW 42.52.350. The trial court additionally found that the Ethics Board was entitled to quasi-prosecutorial and quasi-judicial immunity from a general negligence cause of action related to the Ethics Board's reasonable cause determination. Finally, the trial court found that the Ethics Board had absolute immunity from a defamation cause of action related to its publication responsibilities. The trial court granted the Ethics Board's motion to dismiss and ordered the dismissal of Horenstein's three claims with prejudice.

Horenstein then moved for reconsideration. The trial court denied the motion without a hearing.

Horenstein appeals.[6]

ANALYSIS

Horenstein argues that the trial court erred in dismissing each of his three alleged causes of action against the Ethics Board: (1) a negligence claim, (2) a negligent investigation claim, and (3) a defamation claim. We address each in turn below.

A.    *CR 12(b)(6)*

We review de novo a trial court's decision to dismiss a complaint for failing to "state a claim upon which relief can be granted." CR 12(b)(6); *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 584, 551 P.3d 1067 (2024), *review denied,* 4 Wn.3d 1002 (2025). Dismissal under this basis is appropriate only if it appears beyond a reasonable doubt that a plaintiff cannot prove any

---

[6] Horenstein appealed to the Washington Supreme Court for discretionary review. A department of the Court unanimously agreed to transfer the case to our court.

set of facts which would justify recovery. *Byrd v. Pierce County*, 5 Wn. App. 2d 249, 256-57, 425 P.3d 948 (2018).

We assume the truth of the allegations contained in the complaint and may consider hypothetical facts beyond the record. *Wiklem*, 31 Wn. App. 2d at 584. "'[A]ny hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim.'" *Byrd*, 5 Wn. App. 2d at 257 (quoting *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995)). We grant a motion to dismiss "sparingly and with care' and, as a practical matter, 'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Kinney v. Cook*, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting *Hoffer v. State*, 110 Wn.2d 415, 420, 775 P.2d 781 (1988)) (internal quotation marks omitted).

B.    *General Negligence*

Horenstein argues that he sufficiently pleaded the basis for a negligence cause of action. We disagree.

i.    <u>Negligence Claims Against Governmental Entity</u>

Under RCW 4.92.090, state governmental entities are liable for "tortious conduct" to the same extent as a private person or corporation. To raise a negligence claim against such an entity, however, a plaintiff must prove "'the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury.'" *Washburn v. City of Federal Way*, 178 Wn.2d 732, 753, 310 P.3d 1275 (2013) (quoting *Michaels v. CH2M Hill, Inc.,* 171 Wn.2d 587, 605, 257 P.3d 532 (2011)).

Because governments are responsible for some duties that are not legal duties within the meaning of tort law, "we carefully analyze the threshold element of duty in negligence claims against governmental entities." *Washburn*, 178 Wn.2d at 753. "[T]o establish a duty in tort against a governmental entity, a plaintiff must show that the duty breached was owed to an individual and was not merely a general obligation owed to the public." *Norg v. City of Seattle*, 200 Wn.2d 749, 757, 522 P.3d 580 (2023). The question of duty is dispositive because no defendant can be liable for negligence unless they are under a legal duty to use care. *Ehrhart v. King County*, 195 Wn.2d 388, 396, 460 P.3d 612 (2020).

ii.     Implied Tort Cause of Action Derived from a Statutory Duty

Horenstein alleged that the Ethics Board had and breached the following duties: (1) to "[c]onduct a fair and impartial ethics investigation in accordance with RCW 42.52 and WAC 292-100," (2) to "[e]xercise independent judgment and not approve allegations from other agencies absent independent investigation," and (3) to "[a]fford [Horenstein] due process, including the opportunity to respond to allegations and provide relevant information." CP at 4. Horenstein appears to identify these duties as deriving from RCW 42.52.360(3)(d)'s requirement that the Ethics Board "shall . . . [i]nvestigate, hear, and determine complaints by any person or on its own motion" and RCW 42.52.420's requirement that the Ethics Board's staff "shall investigate the complaint . . . [and] shall either make a determination that the complaint should be dismissed . . . , or recommend to the board that there is or that there is not reasonable cause to believe that a violation of this chapter or rules adopted under it has been or is being committed."

No. 60121-4-II

In determining whether statutory provisions give rise to an implied cause of action, we apply the three-part test set out by the Supreme Court in *Bennett v. Hardy*.[7] *Carter v. State*, 26 Wn. App. 2d 299, 310, 526 P.3d 874 (2023). In determining whether the statutory provisions imply a cause of action, we consider:

> (1) whether the plaintiff is within the class for whose benefit the legislature enacted the statute, (2) whether legislative intent implicitly or explicitly supports creating a remedy, and (3) whether finding an implied remedy is consistent with the legislation's underlying purpose.

*Id*.

Here, the application of *Bennett* weighs against implying a cause of action for Horenstein at and leading up to the reasonable cause determination.

When the legislature enacted the EPSA, it provided an express legislative declaration:

Government derives its powers from the people. Ethics in government are the foundation on which the structure of government rests. *State officials and employees of government hold a public trust that obligates them, in a special way, to honesty and integrity in fulfilling the responsibilities to which they are elected and appointed.* Paramount in that trust is the principle that public office, whether elected or appointed, may not be used for personal gain or private advantage.

The citizens of the state expect all state officials and employees to perform their public responsibilities in accordance with the highest ethical and moral standards and to conduct the business of the state only in a manner that advances the public's interest. State officials and employees are subject to the sanctions of law and scrutiny of the media; ultimately, however, *they are accountable to the people and must consider this public accountability as a particular obligation of the public service.* Only when affairs of government are conducted, at all levels, with openness as provided by law and an unswerving commitment to the public good does government work as it should.

The obligations of government rest equally on the state's citizenry. *The effectiveness of government depends, fundamentally, on the confidence citizens can have in the judgments and decisions of their elected representatives.* Citizens, therefore, should honor and respect the principles and the spirit of representative

---

[7] 113 Wn.2d 912, 784 P.2d 1258 (1990).

democracy, recognizing that both elected and appointed officials, together with state employees, seek to carry out their public duties with professional skill and dedication to the public interest. Such service merits public recognition and support.

All who have the privilege of working for the people of Washington state can have but one aim: *To give the highest public service to its citizens.*

RCW 42.52.900 (emphasis added).

The EPSA sets out various restrictions on state employees including restricting state employees from having "an interest, financial or otherwise, direct or indirect, or engag[ing] in a business or transaction or professional activity, or incur[ring] an obligation of any nature, that is in conflict with the proper discharge of . . . the state employee's official duties." RCW 42.52.020; *see also e.g.* RCW 42.52.030 (restrictions of beneficial interests in certain transactions); RCW 42.52.040 (restrictions on assisting others in certain transactions); RCW 42.52.050 (restrictions on disclosing confidential information, concealing records, and others). And, so to assist state employees in understanding their obligations under the EPSA, each executive branch agency is required to designate an ethics advisor or advisors. RCW 42.52.365.

Through the EPSA, the legislature created the Ethics Board to enforce the EPSA with regard to state employees such as Horenstein, including enforcing the EPSA if executive branch employees had violated the act. RCW 42.52.360(1), (3). As part of this enforcement responsibility, the EPSA included, among other things, a responsibility for the Ethics Board to investigate, hear, and determine complaints and to impose or recommend a variety of consequences from violations, including sanctions, suspension, removal, or prosecution. RCW 42.52.360(3).

To facilitate this enforcement responsibility, the EPSA set out a general process for investigating, hearing, and determining whether the complaints the Ethics Board receives have merits and, if so, what consequences are accordingly appropriate. Horenstein challenges the Ethics Board and its staff's actions in the early stages of this process: namely, the Ethics Board's actions after receiving a complaint and through determining whether reasonable cause existed to believe that an alleged violation had occurred or continued to occur.

At that stage in the process, Horenstein was not within the class of people who the legislature intended to protect by setting out a general process for investigating, hearing, and determining complaints. Investigating a complaint regarding a state employee's possible violation of the EPSA and determining whether reasonable cause exists to warrant a full public hearing on the matter further the Ethics Boards' responsibility to enforce the EPSA *against* executive office employees, not in protection of those employees. Various provisions in the EPSA provide certain protections for state employees; however, those relate to actions *following* a reasonable cause determination. *See e.g.* RCW 42.52.430(1), (3) (public hearing including right to appear, including with counsel, and right to submit testimony, "be fully heard," and cross-examine witnesses); RCW 42.52.500 (option to have the hearing conducted by an administrative law judge if the total penalty and costs amount is more than $500).

Although, we "'can assume that the legislature is aware of the doctrine of implied statutory causes of action,'" under *Bennett*'s second prong, our ultimate inquiry is whether legislative intent explicitly or implicitly supports creating a remedy. *Tyner v. Dep't of Soc. & Health Servs.*, 141 Wn.2d 68, 80, 1 P.3d 1148 (2000) (quoting *Bennett*, 113 Wn.2d at 919). While there is no clear indication that the legislature intended to offer a cause of action remedy

to the subjects of complaints leading up to and at the reasonable cause determination stage, the legislature provided whistleblower protections to state employees who *file* a complaint under chapter 42.40 RCW, Washington's state employee whistleblower protection act, and chapter 49.60 RCW, the Washington State Civil Rights Act. RCW 42.52.410(3)(a). The whistleblower protections provided under chapter 42.40 RCW are guaranteed "even if the ethics board denies an investigation of the complaint." RCW 42.52.410(3)(b).

Moreover, another provision in the EPSA discusses the applicable provisions for "reconsideration or judicial review of an ethics board's order that a violation of this chapter or rules adopted under it has occurred" but does not discuss review of the Ethics Boards or its staff's action beyond the order. RCW 42.52.440. The Ethics Board's order is filed after a hearing on the complaint. RCW 42.52.430(5). From these provisions, it appears that, contrary to intending to provide a cause of action for the state employees subject to complaints at and leading up to the reasonable cause determination stage, the legislature intended to provide remedies beginning with the filing of the complaint for retaliated-against state employee complainants. From RCW 42.52.440, it appears that any remedy intended by the legislature for the subject of a complaint begins when or if the Ethics Board concludes, after the hearing, that a violation has in fact occurred.

Finally, finding an implied remedy at this stage of the Ethics Board's process for the subject of a complaint would not be consistent with the legislation's underlying purpose. As discussed above, the EPSA imposes ethical obligations on the employees of this state. RCW 42.52.900 discusses these obligations repeatedly and emphasizes:

> State officials and employees of government hold a public trust that obligates them, in a special way, to honesty and integrity in fulfilling the responsibilities to which they are elected and appointed. Paramount in that trust is the principle that public office, whether elected or appointed, may not be used for personal gain or private advantage.
>
> The citizens of the state expect all state officials and employees to perform their public responsibilities in accordance with the highest ethical and moral standards and to conduct the business of the state only in a manner that advances the public's interest. State officials and employees are subject to the sanctions of law and scrutiny of the media; ultimately, however, they are accountable to the people and must consider this public accountability as a particular obligation of the public service.

RCW 42.52.900. Given the Ethics Board and its staff's role in enforcing these obligations against state employees like Horenstein and the entire process of investigating, hearing, and determining the complaint, a remedy at the investigatory and reasonable cause determination stage would be inconsistent with the ultimate goal of ensuring that state employees meet their ethical obligations to the public under the act.

Because all three *Bennett* prongs weigh against the legislature implying a cause of action for complainants, like Horenstein, leading up to and at the reasonable cause determination stage, Horenstein fails to show that the Ethics Board or its staff owed him a statutory duty for the actions challenged.

### iii.    Common Law Duty

Separate from statutory duties, a government entity may nevertheless owe an individual a duty recognized under common law. *See Norg*, 200 Wn.2d at 759, 763.

While Horenstein argues that he raises a negligence claim based in the common law, the only duties Horenstein specifically identifies relate to alleged statutory duties under RCW 42.52.360(3)(d) and RCW 42.52.420(2). In neither the complaint nor Horenstein's briefing does

15

he indicate that the duties allegedly breached instead relate to the common law duty of reasonable care or another common law duty. *See Norg*, 200 Wn.2d at 763 (holding that the public duty doctrine does not apply to a municipality's alleged breach of the common law duty to use reasonable care); *see also Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 550, 442 P.3d 608 (2019) ("At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others."). Accordingly, Horenstein fails to show that he pleaded a common law negligence claim based on some common law duty the Ethics Board or its staff owed Horenstein.

To the extent that Horenstein argues that his common law negligence claim derives from a "special relationship" between Horenstein and the Ethics Board, his argument fails.

First, the "special relationship" principle Horenstein relies on applies in cases where, contrary to there being a common law duty, a duty arises from a generally applicable statute. *Norg*, 200 Wn.2d at 758; *see also Sundberg v. Evans*, 78 Wn. App. 616, 624-25, 897 P.2d 1285 (1995); *Moore v. Wayman*, 85 Wn. App. 710, 718, 934 P.2d 707 (1997). If a governmental entity's duties are based on a statute and owed to the public generally, then "the public duty doctrine applies" and the statutory duties are only actionable if an exception applies. *Norg*, 200 Wn.2d at 758-59.

Second, even if the public duty doctrine applied in Horenstein's case,[8] he failed to plead facts sufficient to show that the "special relationship" exception would apply. The "special relationship" is a recognized exception of the public duty doctrine. *Id*. The exception "allows tort actions for negligent performance of public duties if the plaintiff can prove circumstances

---

[8] Neither party argues whether the public duty doctrine applies.

setting his or her relationship with the government apart from that of the general public."
*Cummins v. Lewis County*, 156 Wn.2d 844, 854, 133 P.3d 458 (2006). A special relationship
exists if the plaintiff establishes three elements: "(1) direct contact or privity between the public
official and the plaintiff that sets the plaintiff apart from the general public, (2) an express
assurance given by the public official, and (3) justifiable reliance on the assurance by the
plaintiff." *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 879, 288 P.3d 328
(2012). The third element, whether the plaintiff detrimentally relied on the assurances is a
question of fact we do not resolve at this case's procedural posture. *See id.* (declining to address
the third element's question of fact on appeal from summary judgment).

Assuming the truth of Horenstein's allegations, Horenstein had direct contact with the
Ethics Board through its executive director, and she assured him that the same conduct at issue in
DSHS's complaint was not actionable. However, while Horenstein alleges that the executive
director assured him that his complained-about actions were not actionable, it is unclear how this
assurance relates to the generally applicable duties Horenstein identifies in his complaint.

Horenstein alleged that the Ethics Board had and breached duties to "[c]onduct a fair and
impartial ethics investigation," "[e]xercise independent judgment and not approve allegations
from other agencies absent independent investigation," and provide Horenstein with due process.
CP at 4. But, from the facts alleged, the executive director's statement did not expressly assure
Horenstein that he, as a particular individual as opposed to the general public, would be provided
the duties identified in Horenstein's complaint. And Horenstein does not present any
hypothetical facts that, if true, would show a connection between the express assurance made and
the generally applicable duties identified. From the record here, Horenstein raises no expressed

allegations that would have made the specific duties included in Horenstein's negligence cause of action ones that were owed to him, as an individual, as the result of a special relationship. *See Cummins*, 156 Wn.2d at 855 ("'A government duty cannot arise from implied assurances.'" (quoting *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 789, 30 P.3d 1261 (2001)).

Horenstein also failed to plead that he relied on the executive director's statements or that any damage resulted from his reliance. In his negligence cause of action in the complaint, Horenstein listed multiple actions of the Ethics Board that he alleged constituted a breach of the Ethics Board's duties. However, none of the alleged breaches described mentioned the executive director's statement. Additionally, in Horenstein's listed harms under this cause of action, he described suffering emotional distress, reputational damage, and financial loss but all of the described harms were connected to the investigation and not alleged to result from his reliance on any statement by the executive director. While we do not resolve the question whether Horenstein did justifiably rely on any assurance by the executive director at this stage, Horenstein's complaint fails to allege any facts that Horenstein relied on the executive director's assurance and that such reliance caused him damages. Because of this insufficiency as well as that mentioned above, Horenstein fails to show that the special relationship exception to the public duty doctrine would apply to his alleged breached duties.

Because Horenstein fails to show that the duties identified in his complaint were actionable duties under his alleged facts, we hold that Horenstein's complaint fails to state an actionable duty for the purposes of a negligence claim. Accordingly, the trial court did not err in dismissing his negligence claim.

C.      *Negligent Investigation*

Next, Horenstein argues that the Ethics Board can be held liable for a separate tort of negligent investigation. He asserts that, although our courts have not recognized a separate negligent investigation tort except in limited circumstances, the circumstances here qualify under an established exception. In the alternative, Horenstein asks us to establish such a tort against state agencies with mandatory duties to investigate unless such action is precluded by the legislature. We disagree with Horenstein that a cognizable negligent investigation cause of action exists under the facts alleged.

Generally, Washington's common law does not recognize negligent investigation claims. *Janaszak*, 173 Wn. App. 703, 725, 297 P.3d 723 (2013). This is so "because of the potential chilling effect such claims would have on investigations." *Id*. Accordingly, we have repeatedly refused to recognize a negligent investigation cause of action as a cognizable claim against law enforcement and various types of other investigators. *Id. See e.g.*, *id*. at 709, 725 (Washington Department of Health investigator); *Fondren v. Klickitat County*, 79 Wn. App. 850, 853, 863, 905 P.2d 928 (1995) (law enforcement); *Dever v. Fowler*, 63 Wn. App. 35, 46, 816 P.2d 1237 (1991), 824 P.2d 1237 (1992) (Seattle Fire Department investigator).

Horenstein relies on *Tyner*, as support that, despite our courts' general reluctance to recognize a cause of action for negligent investigations, the circumstances here are like an exception held in *Tyner*. 141 Wn.2d at 68. In *Tyner*, a father sued DSHS for negligent investigation when he was separated from his children during a child abuse investigation. *Id.* at 71. The court applied the *Bennett* test to evaluate whether an implied statutory cause of action

19

existed from a statute making it "'the duty of the law enforcement agency or [DSHS] to investigate.'" *Id*. at 77 (quoting RCW 26.44.050).

Distinguishable from here, DSHS did not contest whether the statute created a duty to investigate. *Id*. Instead, the dispute was whether the duty to investigate flowed to the father. *Id*. Additionally, the statutory provision at issue in *Tyner* expressly used the term "duty" to describe the investigatory mandate, unlike the statute here. *Id*. Applying the *Bennett* test, and contrary to our conclusion above, the court found all three prongs of the test satisfied. *Id.* at 80. Moreover, the court also noted that Washington case law had already recognized DSHS liability for negligent investigations. *Id*. at 78 (discussing *Babcock v. State*, 116 Wn.2d 596, 809 P.2d 143 (1991)).

We decline to extend the exception recognized in *Tyner* to the Ethics Board under the circumstances here. Except for an exception for DSHS caseworkers in the context of child abuse investigations, Horenstein points to no other recognized exception to our general rule of not recognizing negligent investigation claims. Accordingly, we hold that Horenstein's claim of negligent investigation fails.

D.      *Defamation Claim*

Horenstein argues that the trial court's dismissal of his defamation claim was improper and premature. We disagree because, under the facts alleged, Horenstein failed to plead facts that would state a claim for defamation.

A plaintiff raising a defamation claim must show "falsity, an unprivileged communication, fault[,] and damage." *Herron v. KING Broad. Co.*, 112 Wn.2d 762, 768, 776 P.2d 98 (1989). Truth is a complete defense to a defamation claim. *LaMon v. Butler*, 44 Wn.

App. 654, 659, 722 P.2d 1373 (1986), *aff'd*, 112 Wn.2d 193 (1989). The plaintiff must show all of the elements "with convincing clarity." *Herron*, 112 Wn.2d at 768.

Horenstein's defamation claim fails for insufficiently pleading the required defamation elements because the only "false" statement Horenstein alleges is the Ethics Board's newsletter publication "not[ing] that the Board had found reasonable cause in [] Horenstein's case." CP at 5. In his complaint, Horenstein alleges that "[t]he statement was false because reasonable cause did not exist to find a violation." CP at 5. Assuming the truth of Horenstein's allegations, Horenstein's own presentation of the facts admit that, at the time of the Ethics Board's newsletter, the Ethics Board had determined reasonable cause existed to proceed on an ethics complaint. It was after this determination that Horenstein alleged that the Ethics Board "noted that the Ethics Board found reasonable cause in [] Horenstein's case" and published such in a newsletter on its website. CP at 4-5.

Significantly, the newsletter did not state that there was reasonable cause, only that the Board found reasonable cause. According to Horenstein's alleged facts, that statement was true.

It appears beyond a reasonable doubt that Horenstein cannot prove a defamation claim's required element of falsity based on the newsletter's statement at the time in which it was made. Therefore, dismissal under CR 12(b)(6) for this claim was appropriate. *See Byrd*, 5 Wn. App. 2d at 265 (affirming a trial court's granting of a motion to dismiss when there is an insuperable bar to relief); *see also Bartz v. Dep't of Corr. Pub. Disclosure Unit*, 173 Wn. App. 522, 534, 297 P.3d 737 (2013) ("We may affirm the trial court on any ground that the record supports.").

In summary, because we conclude that Horenstein failed to state a claim for any of his three alleged causes of action, we affirm the trial court's granting of the Ethics Board's motion to dismiss all three claims.[9]

CONCLUSION

We affirm the trial court's granting of the Ethics Board's motion to dismiss Horenstein's three claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____

Che, J.

We concur:

_____

Maxa, P.J.

_____

Price, J.

---

[9] The Ethics Board asserts that Horenstein's claims fail because the Ethics Board has absolute immunity under quasi-judicial and quasi-prosecutorial immunity. Br. of Resp't at 16-21. Because we hold that Horenstein's three claims fail because he fails to state a claim, we do not reach the question whether the Ethics Board is immune from such claims.